**Leon HANEY, Appellant,**

v.

**COOKE COUNTY TAX APPRAISAL DISTRICT, Bill Sherman, Chief Appraiser; Appraisal Review Board, Parker Yarbrough, Chairman, Appellees.**

**No. 2–89–006–CV.**

Court of Appeals of Texas,
Fort Worth.

Dec. 29, 1989.

Jimmy P. Horany, Wichita Falls, for appellant.

Russell Duncan, Gainesville, for appellees.

Before JOE SPURLOCK, II, KELTNER and MEYERS, JJ.

OPINION

KELTNER, Justice.

This is an appeal from the denial of relief in the district court upon appellant Leon Haney's petition for review of an order of the Cooke County Appraisal Review Board upholding the taxable value of his real estate by the Cooke County Tax Appraisal District.

The real estate in question consists of appellant's house and one acre of land near Callisburg and his car wash facility at 523

---

Grand Street in Gainesville. In his petition, appellant alleges the tax appraisal valuation of the properties for 1987 was arbitrary, excessive, and in excess of their fair market value. The court was requested to fix their fair market value and tax appraisal value and to award attorney's fees. After a bench trial, a take-nothing judgment was rendered.

By three points of error, appellant attacks the judgment because of the failure to appraise the property in accordance with TEX.TAX CODE ANN. sec. 23.01 (Vernon Supp.1989); because the valuations were arbitrary and excessive, not based on market value and in violation of TEX. CONST. art. VIII, sec. 1; and because the valuations were discriminatory and excessive and in violation of TEX. CONST. art. VIII, sec. 1.

We reverse and remand.

It was shown that the car wash property was appraised at $47,500.00, calculated at $3.25 per square foot for 11,250 square feet of land ($37,660.00) and $9,840.00 for the improvements. The house and lot were appraised at $800.00 for the land and $31,100.00 for improvements, an aggregate of $31,900.00. Appellant sought to have those valuations reduced to $31,300.00 for the car wash and $21,700.00 for the house and lot. The court filed findings and conclusions to the effect that the valuations set by the review board were not arbitrary, excessive, nor in excess of the fair market value of the properties. It was concluded that the fair market values were $47,500.00 and $31,900.00 respectively, and that appellant had failed to show his entitlement to attorney's fees. The issue of attorney's fees is not raised in the appeal.

Appellant testified that the lot on which he built his car wash is 148' by 72½' consisting of 10,700 square feet instead of the 11,250 square feet stated in the tax records. His figures were accepted and used in the appraisal district's 1988 appraisal. He built the four-bay building himself, using "second-hand reject" materials. He agreed that the value of the improvements was $9,840.00 as determined by the appraisal review board. Appellant stated that the land value was $1.00 per square foot. As to his home, appellant agreed the appraised value of $800.00 on the one acre was acceptable but contended that the fair market value of the house was about $20,000.00. He stated it was brick veneer, about 1700 square feet and cost $12,230.00 to build in 1961. Its foundation had settled and the brick had cracked. There had been termite damage to the sheetrock in the living room so they had the "[s]heetrock redone and repainted." Appellant admitted that he had moved a frame house from the car wash land and placed it on a two and a half acre plot near his home. He believed it to be worth $30,000.00. It was smaller than his home but he felt that it was a "better built house." Appellant admitted that a car wash "just down the street" was appraised at the same $3.25 per square foot that was applied to his car wash. Hogan's Jiffy Lube on Grand Avenue had the same valuation, as did a Dr. Anwar's property on Grand Avenue. He could not remember checking on the valuation of any other small properties.

Appellant's expert witness, Phyllis Murrill, placed the fair market value of the car wash as follows:

| | |
|---|---|
| Lot: 72½' × 148' or 10,730 sq. ft. at $2.00– | $21,460.00 |
| Improvements: | $ 9,000.00 |
| | $30,460.00 |

Her opinion was based, in part, upon the fact that the crudely constructed improvements were a detriment to the land, so that a purchaser would incur the expense of demolishing them before the land could be used for any other purpose. She produced records showing tax valuations on nine properties in the city of Gainesville ranging from less than one cent per square foot to $2.50 per square foot and opined that valuation of appellant's property was discriminatory. The witness further testified that she discovered seven specific instances of mathematical, measurement and other errors and discrepancies made by the appraisal district and described them. Murrill further testified about the values of land on Grand Avenue in comparison to land along

U.S. Highway 82 which intersects Grand Avenue some distance North of appellant's car wash. She stated that the land along Highway 82 was more valuable than that on Grand Avenue where there was a mixture of small businesses and residences.

Murrill inspected appellant's home and pronounced it in fair to poor condition, having severe termite damage and severe settlement damage which could cause structural problems if not corrected. The settlement had caused severe brick damage on the outer wall, uneven floors and interior dry wall damage. A combination of termite and water damage had caused both bathroom stools to be falling through the floor and had damaged the base cabinet beneath the kitchen sink beyond repair. She further testified large portions of the foundation were missing. The house did not have central heat or air conditioning. She believed depreciation was accelerated by the termite and water damages which had not been attended to, so that 2% depreciation per year for a total of 52% was appropriate. Her valuation was $20,700.00 on the house and $1000.00 on the lot.

William Randolph Sherman, Chief Appraiser of the appraisal district testified that the district's primary source of information is that regarding sales of different types of property within different areas of the county. They tried to gather information on sales of vacant lots and sales of similar type houses and put those values together to ascertain land values and improvement values. It was found that, south of appellant's car wash, land sales were for $3.00 to $3.25 per square foot and in the three blocks to the north on Grand Avenue the sales prices ranged from $3.50 to $5.00. He pointed out that along Highway 82 the sales prices were in the vicinity of $27,500.00 per acre and represented from four to six acre tracts. In such cases the land valuations were based upon the value of an acre rather than the value of a square foot. Sherman described the lots on Grand Avenue to be from 60 to 100 feet frontage and occupied by small retail businesses and residences. He testified that valuations were the same on both sides of the avenue and within the same areas with appellant's property being at the south end of $3.25 area, about two blocks south of which began the $3.00 area and about three blocks north of which began the $3.50 area. Appraisals, he stated, were based on the neighborhood, and it is therefore not proper to equate, as Murrill did, Grand Avenue with Highway 82.

As to the appraisal of appellant's home, Sherman described the procedure as mass appraisal without entering the homes, unless invited in. In such cases, a similar-type property that sold in the area provides the basis for valuing other properties. The average price per square foot from the sale of several structures of a similar-type is the determining factor and is applied to all other similar structures in the area. Appellant's home was appraised at $27.20 per square foot calculated to be $38,875.00. Twenty per cent was allowed for depreciation, reducing the value to $31,100.00, plus the value of the land. Sherman stated his understanding of the general practice in tax appraisals is to physically view the property from the outside and appraise it based on information at hand.

Point of error number one is addressed to the procedure of mass appraisal used to determine valuation of appellant's home, claiming such procedure is illegal and does not conform to the requirement of TEX.TAX CODE ANN. sec. 23.01(b) (Vernon Supp.1989) as follows:

Section 23.01 Appraisals Generally

. . . .

(b) The market value of property shall be determined by the application of generally accepted techniques, and the same or similar appraisal techniques shall be used in appraising the same or similar kinds of property. However, each property shall be appraised based upon the individual characteristics that affect the property's market value.

Appellant concludes that the appraisers were unaware of individual characteristics of his home which could be observed only through an inside inspection. Appellant cites, in support of his claim that mass appraisals are illegal, *Del Valle Ind.*

*School Dist. Bd. of Equal. v. Hackett*, 563 S.W.2d 338, 341 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). In that case, the tax assessor placed an assessed value of land north of the Colorado River at 80% of its appraised value and land south of the river at 38% of its appraised value. Such scheme was held to be "a fundamentally wrong and erroneous scheme of taxation" as being without regard to the property's reasonable cash market value. *Id.* at 342. There is no similarity between that plan and the mass appraisal plan utilized in the case before us, and the case is thus not in point.

The Fort Worth court has previously considered a similar appraisal method, however, in *City of Saginaw v. Garvey Elevators, Inc.*, 431 S.W.2d 575 (Tex.Civ.App.— Fort Worth 1968, writ ref'd n.r.e.) and stated as follows:

> It is well known that it is impracticable in the procedure undertaken by taxing authorities and Boards of Equalization for direct value evidence to be sought and secured as to each item of property to be taxed. What is practical to be done, and what is usually done, is to settle upon a standard or 'yardstick' of measure for different classes of property, application of which to the different items of property within the class will usually result in correct value. An example would be in instances of residential construction. Oftentimes the number of square feet in the floor of the structure, is used as a multiple for determining value of this character of improvements on a lot. The class of property is determined (such as whether frame construction or otherwise; whether composition or wood shingles; etc.) to be taken into consideration with age and size. A house between 15 and 20 years old, of brick-veneer construction, with composition shingles, etc., would fall within a certain classification wherein ordinarily a proper market value would be equivalent to 'X-dollars' multiplied by the number of square feet. Except in cases of evidence demonstrating the contrary to be true the tax authorities can settle a

large number of cases in a relatively brief period by use of such a method. *Id.* at 578.

Thus, we cannot say that, in the case before us, the proper market value of a house similar to that of appellant's would not ordinarily be the value established by the mass appraisal in the absence of evidence demonstrating the contrary to be true. Here, however, appellant's evidence demonstrates that the mass appraisal results are not reliable as applied to his house because it cannot be assumed all comparable houses had structural damages similar to those evident in appellant's house. Appellees did not challenge the accuracy of the evidence relating to the condition of the house, nor did they address the question of whether, and to what extent, such condition would affect the average square foot value utilized in its appraisal. In failing to do so, appellees have shown that this property was not appraised "based upon the individual characteristics that affect the property's market value," as the statute dictates. Furthermore, appellees clearly failed to recognize and consider the uncontroverted fact that the size of the car wash property was overstated by 525 square feet, which by application of their own figure of $3.25 per square foot resulted in an excessive valuation of that land of $1,706.25. In accepting and approving appellees' valuations, the trial court erred. *See* and *compare Brazos Cty. App. Dist. v. Sun Operating*, 778 S.W.2d 130, 132 (Tex.App.—Texarkana 1989, no writ) (Valuation reduced from $2,084,070.00 to $250,000.00 because a gas processing plant was obsolete, being shut down, and had no market value except as salvage). Point of error one is sustained.

Our holding should not be construed as an overall condemnation of the appellees' initial appraisal plan, but is restricted only to their duty to establish market value in a trial de novo brought to contest their initial appraisal.

In view of our disposition of this case, we find a discussion of appellant's other points is unnecessary.

The judgment is reversed and remanded for new trial.