Opinion issued August 24, 2006















In The
Court of Appeals
For The
First District of Texas




NO. 01–05–00086–CV




HOLLOWAY-HOUSTON, INC., Appellant

V.

GULF COAST BANK & TRUST COMPANY, Appellee




On Appeal from County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 798,747




O P I N I O N

          In this assignment of accounts appeal, appellant, Holloway-Houston, Inc.
(Holloway), challenges the judgment of the trial court rendered in favor of appellee,
Gulf Coast Bank & Trust Company (Gulf Coast). In 21 issues on appeal, Holloway
argues that the trial court’s findings of fact are supported by legally and factually
insufficient evidence and that the trial court’s conclusions of law are incorrect as a
matter of law.
          We affirm.
Background
          Gulf Coast is involved in the business of factoring.


 On September 19, 2001,
Gulf Coast entered into a Receivables Purchase Agreement with Star Steel & Trading,
Inc. (Star Steel). Pursuant to this contract, Star Steel assigned all of its accounts to
Gulf Coast. Among the accounts assigned to Gulf Coast were accounts in which
Holloway owed money to Star Steel. Gulf Coast sent notice to Holloway stating that
future payments should be remitted to Gulf Coast. Holloway’s branch manager
signed and returned the notification. Gulf Coast also contacted Holloway before
purchasing each Holloway invoice to verify that the amount was due and payable and
that payment was to be directed to Gulf Coast. Each verification included an address
to which payments were to be sent, a “lockbox” at Gulf Coast. Holloway regularly
used that address for payment on the Star Steel accounts. 
          In April 2003, Charles Elliott, the President of Star Steel, telephoned
Holloway’s office manager, Cindy Dutton, and asked her to deliver Holloway’s
checks to Star Steel rather than to Gulf Coast. After checking with her supervisor,
Dutton paid four of the assigned invoices directly to Elliott. Instead of paying the
funds to Gulf Coast, Elliot deposited the funds into a Star Steel account. Star Steel
subsequently entered into bankruptcy and is not a party to this litigation. Gulf Coast
never received payment of the invoices.
          Gulf Coast sued Holloway to collect on the four accounts. After a bench trial,
the trial court rendered judgment in favor of Gulf Coast for $30,512.10, prejudgment
interest, and $11,100 in attorney’s fees. 
          Pertinent to this appeal, the trial court made the following findings:
          Findings of Fact
          5.       Among the accounts receivable purchased from Star Steel were
certain accounts owed by Holloway (the “Holloway Accounts”). 
The Holloway Accounts assigned to Gulf Coast Bank included
the accounts evidenced by the following four Star Steel invoices:
 
                    Invoice Date                   Invoice Number             Balance
                    March 13, 2003               202549                             $10,843.40
                    March 13, 2003               202550                             $560.00
                    March 18, 2003               202554                             $19,010.70
                    March 25, 2003               202561                             $98.00
 
          6.       The total amount owed for the Holloway Accounts is $30,512.10.
          7.       Prior to purchasing the Holloway Accounts, Gulf Coast Bank
advised Holloway that the bank would purchase the accounts and
that payment should therefore be made to Gulf Coast Bank, as
assignee of the Holloway Accounts.
 
          8.       Before purchasing the Holloway Accounts, Gulf Coast Bank also
contacted Holloway to verify those accounts. Holloway did
verify each of the accounts and agreed to pay them to Gulf Coast
Bank. Specifically, Holloway was asked to sign, with respect to
each invoice, a Request for Invoice Verification. Each of these
verifications was signed and accepted by an authorized employee
of Holloway, Cindy Dutton. Moreover, each verification stated
that the invoice “is currently due in the amount indicated above
and represents payment for merchandise delivered and/or services
rendered, free of any defense, offset, counterclaim or other
limitation, and that payments for these invoices and all future
payments will be directed to” Gulf Coast Bank. 
 
          9.       Despite repeated notice of the assignment of the Holloway
Accounts to Gulf Coast Bank, and although Holloway
acknowledged each assignment and agreed to pay the invoices
directly to Gulf Coast Bank, no payment of these accounts was
made to the bank. In addition, neither Star Steel nor any other
party has paid any portion of the Holloway Accounts to Gulf
Coast Bank. The Holloway Accounts, in the total amount of
$30,512.10, remain due and owing to Gulf Coast Bank.
 
          10.     Holloway did tender payment for the Holloway Accounts to Mr.
Charles Elliot, President of Star Steel, after Gulf Coast Bank
informed Holloway of the assignment of the accounts. However,
Gulf Coast Bank did not authorize Mr. Elliot to accept payment
on its behalf. Furthermore, the Receivables Purchase Agreement
provides no such authority to Mr. Elliot.
 
          Conclusions of Law
          1.       The Holloway Accounts are due and owing in the amount of
$30,512.10.
 
          2.       Having received notice of the assignment of the Holloway
Accounts to Gulf Coast Bank, Holloway was required to pay Gulf
Coast Bank and not the assignor, Star Steel. After receiving such
notice, payment to Star Steel or any other party besides Gulf
Coast Bank would not have the effect of discharging liability on
the accounts. Tex. Rev. Civ. Stat. Art. 9-406(a).
 
          3.       Mr. Elliot was without any authority, express or implied, to accept
or retain payment on behalf of Gulf Coast Bank.
 
          5.       The acknowledgments executed by Holloway constitute a valid
agreement not to assert defenses against Gulf Coast Bank.

          Holloway appeals from the trial court’s findings and conclusions.
Standard of Review
          In an appeal from a bench trial, a trial court’s findings of fact have the same
weight as a jury’s verdict. Amador v. Berrospe, 961 S.W.2d 205, 207 (Tex.
App.—Houston [1st Dist.] 1996, writ denied). We review the legal and factual
sufficiency of the evidence by the same standards applied in reviewing evidence
supporting a jury’s answer. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).
If a party attacks the legal sufficiency of an adverse finding on an issue as to which
he bears the burden of proof, then he must demonstrate on appeal that the evidence
conclusively established all vital facts in support of the issue. Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). In reviewing such a “matter of law”
challenge, we examine the record for evidence that supports the challenged finding,
ignoring evidence to the contrary. Id. If no evidence exists to support the finding,
we examine the entire record to determine if the contrary proposition is established
as a matter of law. Id.
          In reviewing a factual-sufficiency point, we consider all the evidence
supporting and contradicting the finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial
court, as factfinder, is the sole judge of the credibility of the witnesses. Southwestern
Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992,
writ denied).
          We review de novo a trial court’s conclusions of law, and we uphold the
judgment if it can be sustained on any legal theory supported by the evidence. BMC
Software Belgium v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); In re Moers, 104
S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). An appellant may
not challenge a trial court’s conclusions of law for lack of factual sufficiency, but we
review the legal conclusions drawn from the facts to determine their correctness. 
BMC Software, 83 S.W.3d at 794. 
Analysis
Assignment and Purchase of Accounts—Finding 5
          In its first and second issues on appeal, Holloway argues that there is no
evidence to support the trial court’s fifth finding of fact that the Holloway accounts
on which Gulf Coast bases its claims were purchased by Gulf Coast from Star Steel
and that the invoices at issue were assigned to Gulf Coast. Alternatively, Holloway
argues that such a finding is against the great weight and preponderance of the
evidence. 
          Legal Sufficiency
          Holloway contends that no evidence, such as bank records or other
documentary evidence, was offered to show that the invoices at issue were actually
purchased by Gulf Coast. Holloway acknowledges that it received invoice
verifications, but it contends that the invoice verifications were not any evidence of
the purchase of the invoices.
          This case is governed by section 9.406 of the Texas and Business Commerce
Code. See Tex. Bus. & Com. Code Ann. § 9.406 (Vernon 2002). Section 9.406
provides,
                    (a)     Subject to Subsections (b)-(i), an account debtor on an
account, chattel paper, or a payment intangible may
discharge its obligation by paying the assignor until, but
not after, the account debtor receives a notification,
authenticated by the assignor or the assignee, that the
amount due or to become due has been assigned and that
payment is to be made to the assignee. After receipt of the
notification, the account debtor may discharge its
obligation by paying the assignee and may not discharge
the obligation by paying the assignor.
 
                    (b)     Subject to Subsection (h), notification is ineffective under
Subsection (a):
 
                              (1)     if it does not reasonably identify the rights assigned.
Tex. Bus. & Com. Code Ann. § 9.406(a), (b)(1) (emphasis added).
          Section 9.406, as applied to this case, provides that Holloway can discharge its
debt by paying the assignor (Star Steel), but once Holloway is notified that the
accounts have been assigned—not purchased—Holloway can discharge its debt only
by paying the assignee (Gulf Coast). See id.
          Paragraph 2 of the Receivables Purchase Agreement between Gulf Coast and
Star Steel tracks the requirements of section 9.406. Under the terms of that
paragraph, Star Steel offered to sell Gulf Coast all receivables from account debtors,
such as Holloway. The parties agreed that Gulf Coast would examine and verify the
receivables. Gulf Coast would then notify Star Steel which Receivables would
constitute “Factored Receivables,” i.e., purchased receivables. The invoice would
designate the lockbox as the sole address for payment, unless payment was to be
made by wire transfer to a controlled account at Gulf Coast. Upon Gulf Coast’s
execution of a receivables purchase schedule listing a specific receivable, or upon
payment of the initial payment, Star Steel would be deemed to have sold the
receivable to Gulf Coast. 
          Gulf Coast introduced an October 28, 2002 letter sent to Holloway which
stated:
[Star Steel] will be assigning their accounts receivable to [Gulf
Coast]. From this point forward, please continue to make all
checks payable to [Star Steel], but for proper processing and
credit please remit all payments to [Gulf Coast]. 
 
You may be contacted at times by [Gulf Coast] regarding your
acceptance and approval of [Star Steel’s] invoices. Should there
be any questions concerning this matter, please . . . contact Ms.
Robin Gutierrez. . . . This assignment is to remain in effect until
you are notified to the contrary by [Gulf Coast].
 
          Gulf Coast also produced two verification letters, entitled “Request for Invoice
Verification,” that had been sent to Holloway regarding the four invoices. The
verification letters state,
Gulf Coast . . . has entered into an agreement with Star Steel &
Trading, Inc. in order to provide additional working capital to
help facilitate the company’s growth. Under this financing
arrangement, Star Steel has sold their [sic] invoices to [Gulf
Coast]. As part of [Gulf Coast’s] continuing internal control
procedures we would like to confirm the following balances owed
by your company. 

The letters list the invoice numbers, dates, and amounts on the accounts that were not
paid to Gulf Coast. They also state,
Please verify by signing below that this invoice(s) is currently due
in the amount indicated above and represents payment for
merchandise delivered and/or services rendered, free of any
defense, offset, counterclaim or other limitation; and that payment
for these invoices and all future payments will be directed to the
following address:
 
Gulf Coast Bank and Trust Company
For the account of Star Steel & Trading, Inc.
P.O. Box 203047
Houston, TX 77216-3047

Both invoice verifications were signed by Holloway’s office manager, Cindy Dutton. 
The invoice numbers, dates, and amounts listed on the two invoice verification letters
correspond to the amounts listed in the trial court’s fifth finding of fact. Upon receipt
of the verification letters, Holloway made payment to Elliot at Star Steel, rather than
to the lockbox as directed in the letters.
          The invoice verifications and October 28, 2002 letter constitute (1)
authentication by the assignee (Gulf Coast); (2) notification that the amount due has
been assigned; and (3) notification that the amount due was to be paid to Gulf Coast
at the lockbox address. They thus satisfy section 9.406 of the Business and
Commerce Code. See Tex. Bus. & Com. Code Ann. § 9.406. Although Holloway
contends that Gulf Coast was required to show that the accounts had been purchased
by Gulf Coast, section 9.406 does not contain that requirement. Rather, Gulf Coast
must only notify Holloway that the accounts have been assigned. See id. § 9.406(a). 
We conclude, therefore, that the invoice verification letters stating that Star Steel “has
sold their invoices to [Gulf Coast]” and the October 28 letter stating “Star Steel will
be assigning their accounts receivable to Gulf Coast” constitute legally sufficient
evidence to satisfy the trial court’s fifth finding of fact.



          We overrule Holloway’s first issue on appeal.
          Factual Sufficiency
          Holloway also argues that the trial court’s finding is against the great weight
and preponderance of the evidence because Gutierrez could not locate any
documentary proof that Gulf Coast had actually purchased the accounts at issue and
that the accounts had been assigned. As we stated in Holloway’s first issue on
appeal, whether Gulf Coast purchased the accounts is not relevant because section
9.406(a) provides that, once Gulf Coast provided notice to Holloway that the
accounts had been assigned and that payment was to be made to a lockbox under Gulf
Coast’s control, Holloway could discharge its debt only by paying Gulf Coast, the
assignee at the lockbox address, and not by paying Star Steel, the assignor. See id.
          We overrule Holloway’s second issue on appeal.
Invoice Payments—Findings 6 and 9 and Conclusion 1
          In its third and fourth issues on appeal, Holloway argues that no evidence
supports the trial court’s finding that the invoices were not paid and that the total
amount owed for the Holloway accounts is $30,512.10 or, alternatively, that such a
finding is against the great weight and preponderance of the evidence. In its fifth
issue on appeal, Holloway argues that the trial court’s conclusion of law that
Holloway’s accounts are due and owing in the amount of $30,512.10 is erroneous as
a matter of law.
          We have already concluded that legally and factually sufficient evidence
supports the trial court’s finding that Star Steel assigned the four accounts in question
to Gulf Coast and that the invoices notified Holloway of the assignment and directed
that payment be made to Gulf Coast at the address stated on the invoice. It is
undisputed that Holloway did not make payment to Gulf Coast at the address stated
on the invoice. Gutierrez testified that Gulf Coast never received payment, totaling
$30,512.10, on the four invoices. The trial court was entitled to believe Gutierrez’s
testimony, and Holloway provided no contrary evidence that Gulf Coast had been
paid on the four invoices. Thus, the record contains legally and factually sufficient
evidence to support the trial court’s finding that Gulf Coast did not receive payment
on the four invoices and that Holloway owed $30,512.10. 
          We overrule Holloway’s third, fourth, and fifth issue on appeal.
Adequate Notice—Findings 7, 9, and 10 and Conclusion 2
          In its sixth and seventh issues on appeal, Holloway argues that no evidence
supports the trial court’s finding that Gulf Coast advised Holloway that the bank
would purchase the accounts or that the finding is against the great weight and
preponderance of the evidence. In its tenth and eleventh issues on appeal, Holloway
argues that no evidence supports the trial court’s finding that Gulf Coast gave notice
to Holloway about the assignment of accounts or that the finding is against the great
weight and preponderance of the evidence. In its twelfth issue on appeal, Holloway
contends that the trial court’s conclusion of law that Holloway received notice of the
assignment is erroneous as a matter of law. In its thirteenth issue on appeal,
Holloway argues that the trial court’s conclusion of law that Holloway was required
to pay Gulf Coast and not Star Steel was erroneous as a matter of law. In its
fourteenth and fifteenth issue on appeal, Holloway argues that no evidence supports
the trial court’s finding that Holloway tendered payment to Charles Elliott after Gulf
Coast informed Holloway of the assignment of the accounts or that the finding is
against the great weight and preponderance of the evidence. 
          Legal Sufficiency
          Gulf Coast presented the trial court with the Receivables Purchase Agreement
and the three letters previously discussed. The first letter, mailed October 28, 2002
to Holloway, stated that “[Star Steel] will be assigning their accounts receivable to
[Gulf Coast]. From this point forward, please continue to make all checks payable
to [Star Steel], but for proper processing and credit please remit all payments to: [Gulf
Coast] P.O. Box 203047 Houston, Texas 77216-3047.” In addition, Gulf Coast sent
to Holloway two invoice verification letters, dated March 13, 2003 and March 18,
2003, which stated that 
Star Steel has sold their invoices to [Gulf Coast]. . . . [P]ayments
for these invoices and all future payments will be directed to the
following address: 

Gulf Coast Bank and Trust Company
For the account of Star Steel & Trading, Inc.
P.O. Box 203047
Houston, TX 77216-3047 

          These two invoice verification letters included the invoice account numbers,
dates, and amounts. Moreover, Dutton testified that she understood that the letters
stated that Star Steel would be assigning its accounts receivables to Gulf Coast. 
Dutton also testified that, after receiving the letters from Gulf Coast, Holloway
allowed Elliott to pick up payments for the four invoices, even though she knew
doing so was a problem.
          Under section 9.406 of the Uniform Commercial Code (“UCC”), Gulf Coast
was required to notify Holloway that the accounts had been assigned and that
payment should be made to the assignee. See Tex. Bus. & Com. Code Ann. §
9.406(a). “For notice of assignment to be adequate or effective under the U.C.C., an
account debtor must receive notice that the amount due or to become due has been
assigned and must also be notified that payment is to be made to the assignee.” 
Buffalo Pipeline Co. v. Bell, 694 S.W.2d 592, 596 (Tex. App.—Corpus Christi 1985,
writ ref’d n.r.e.). Generally, “after a debtor receives notice of a valid assignment,
payment made by the debtor to the assignor or to any person other than the assignee
is made at the debtor’s peril and does not discharge the debtor from liability to the
assignee.” Id. 
          After reviewing the evidence, we conclude that Gulf Coast’s letters adequately
notified Holloway that the accounts had been assigned and that payment should be
made to Gulf Coast. See Tex. Bus. & Com. Code Ann. § 9.406; BOC Group, Inc.
v. Katy Nat’l Bank, 720 S.W.2d 229, 230–31 (Tex. App.—Houston [14th Dist.] 1986,
no writ) (holding assignment effective from letter that identified the parties, noted
principal amount and amount to become due, noted that assignment was made, and
directed all future payments be made to assignee); Buffalo Pipeline, 694 S.W.2d at
596 (“[T]he actual notice given by appellees provided Sun Pipeline Company notice
or knowledge of facts sufficient to put [Sun Pipeline] on inquiry to ascertain who was
entitled to the lease rental payments.”). After receiving notice of the assignment of
accounts, Holloway tendered payment to Elliott at its own peril, thus failing to
discharge its debt pursuant to section 9.406. See Tex. Bus. & Com. Code Ann.
9.406; BOC Group, 720 S.W.2d at 230–31. Thus, we conclude that the trial court’s
sixth and tenth findings of fact are supported by legally sufficient evidence. We
further conclude that the trial court’s second conclusion of law is a correct statement
of law.
          We overrule Holloway’s sixth, tenth, twelfth, and fourteenth issues on appeal.
          Factual Sufficiency
          In its factual insufficiency argument, Holloway contends that the invoice
verification letters were sent prior to Gulf Coast’s decision to purchase the invoices
“in order to obtain information to use in determining if Gulf Coast wanted to indeed
purchase those specific invoices.” Also, Holloway states that Gulf Coast would not
know whether it was going to purchase an invoice until after it sent a verification
letter and that, even if an invoice verification letter was sent, some of Star Steel’s
invoices were purchased while others were not. We disagree with Holloway’s
implication that it was necessary for Gulf Coast to prove that it had purchased the
invoiced accounts in order for it to be entitled to receive payment as directed in its
invoices to Holloway, although, as set forth above, we conclude that Gulf Coast did
prove that it had purchased the accounts. Section 9.406 of the UCC states that the
account debtor must be notified only that the amount due or to become due has been
assigned. See Tex. Bus. & Com. Code Ann. § 9.406(a). Here, the evidence
consisting of Gulf Coast’s October 28, 2002 letter and the two invoice verification
letters to Holloway, which were signed by Holloway, satisfies the notification
requirements in section 9.406. See id. 
          We overrule Holloway’s seventh, eleventh, and fifteenth issues on appeal.



Agreement to Pay—Findings 8 and 9
          In its eighth and ninth issues on appeal, Holloway argues that no evidence
supports the trial court’s finding that Holloway agreed to pay the accounts to Gulf
Coast or that the finding is against the great weight and preponderance of the
evidence. 
          As the trial court found, the evidence shows that Holloway signed each invoice,
acknowledged the assignment, and agreed to pay Gulf Coast at the lockbox address. 
When an account debtor (Holloway) receives a proper notification that the accounts
have been assigned, Holloway can discharge its debt only by paying the assignee
(Gulf Coast). See Tex. Bus. & Com. Code Ann. § 9.406. By paying the amounts
due on the invoices to Star Steel, instead of to Gulf Coast, Holloway failed to
discharge its debt and thus is liable to Gulf Coast for the debt. See id.
          Section 9.406 does not require a separate or additional agreement between the
account debtor and the assignee, and Holloway cites no authority for such a
proposition. Moreover, we will not reverse the judgment if the controlling findings
of fact support a correct legal theory. See Hitzelberger, 948 S.W.2d at 503. Here, the
trial court’s controlling findings regarding discharge of a debtor pursuant to section
9.406 support a correct legal theory—specifically, that Holloway did not discharge
its debt by paying the assignor instead of the assignee.
          We overrule Holloway’s eighth and ninth issues on appeal.
Agency—Finding 10 and Conclusions 3 & 5
          In its sixteenth and seventeenth issues on appeal, Holloway argues that no
evidence supports the trial court’s finding that Elliott was not authorized to accept
payment for the accounts on behalf of Gulf Coast or that the finding is against the
great weight and preponderance of the evidence. In its eighteenth and nineteenth
issues on appeal, Holloway argues that the trial court erred in failing to find that Star
Steel was authorized to collect receivables on behalf of Gulf Coast because Holloway
proved that Star Steel possessed such authority as a matter of law or, alternatively,
that the lack of a finding was against the great weight and preponderance of the
evidence. In its twentieth issue on appeal, Holloway argues that the trial court’s
conclusion of law that Elliott was without authority to accept payment on behalf of
Gulf Coast is erroneous as a matter of law.
          Holloway contends that even if Gulf Coast purchased the accounts, Holloway
discharged its burden by paying Elliot, Gulf Coast’s authorized agent. Gulf Coast
responds that the Receivables Purchase Agreement did not authorize Star Steel to “act
as its agent to pick up checks.” 
          We resolve Holloway’s issues in accordance with sections 9.406 and 1.103 of
the UCC. Section 9.406 specifically states that once the account debtor has been
notified of an assignment, the debt can only be discharged by paying the assignee. 
Tex. Bus. & Com. Code Ann. § 9.406. We previously discussed the three letters that
notified Holloway that the accounts had been assigned. None of these letters
authorized payment to Elliott. On the contrary, each expressly required Holloway to
pay Gulf Coast directly at the address indicated. Moreover, Dutton testified that she
knew that the accounts had been assigned. Allowing Holloway to discharge its debt
by paying Elliott would be inconsistent with the express provisions of the
Receivables Purchase Agreement and UCC section 9.406.
 Section 1.103 of the UCC provides, 
Unless displaced by the particular provisions of this title, the
principles of law and equity, including the law merchant and the
law relative to capacity to contract, principal and agent, estoppel,
fraud, misrepresentation, duress, coercion, mistake, bankruptcy,
or other validating or invalidating cause shall supplement its
provisions. 

Tex. Bus. & Com. Code Ann. § 1.103(b) (Vernon Supp. 2005). The commentary to
section 1.103 states, “The Uniform Commercial Code preempts principles of common
law and equity that are inconsistent with either its provisions or its purposes and
policies.” Tex. Bus. & Com. Code Ann. § 1.103 cmt. 2. 
          Holloway’s argument is an attempt to persuade the Court that it can discharge
its debt by paying someone other than the assignee, through the common law of
contract and agency despite UCC section 1.103. Its argument is without merit.


 We
thus conclude that Holloway cannot rely on agency principles to supplant the clear
directives mandated by section 9.406 to pay the assignee.
          We overrule Holloway’s sixteenth, seventeenth, eighteenth, nineteenth, and
twentieth issues on appeal.
Agreements Not to Assert Defenses
          In its twenty-first issue on appeal, Holloway argues that the trial court’s
conclusion of law that the acknowledgments executed by Holloway constitute a valid
agreement not to assert defenses against Gulf Coast is erroneous as a matter of law. 
Gulf Coast argues that, even if an agency relationship was established, Holloway
agreed not to assert any defenses at trial. We need not resolve this issue because we
have previously determined that Holloway cannot rely on an agency theory to
discharge its debt under these facts. See Tex. R. App. P. 47.1.
 
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 



                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Alcala, and Bland.