STARFLIGHT 50, L.L.C., Appellant,

v.

HARRIS COUNTY APPRAISAL DIS-
TRICT and Harris County Apprais-
al Review Board, Appellees.

No. 01–08–00234–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 26, 2009.

Travis Scott Crabtree, Looper, Reed & McGraw, P.C., Houston, TX, for Appellant.

Mario L. Dell' Osso, Olson & Olson, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HANKS and BLAND.

## OPINION

JANE BLAND, Justice.

Starflight 50, L.L.C. ("Starflight") appeals a take nothing judgment issued in favor of the Harris County Appraisal District ("HCAD") and the Harris County Appraisal Review Board ("ARB"), rendered after a bench trial. Starflight filed suit against HCAD and the ARB in district court after the ARB denied Starflight's ad valorem tax protest. We decide (1) whether Starflight properly first exhausted its administrative remedies so as to confer jurisdiction on issues of valuation, rendition, and interstate allocation, (2) whether the evidence is legally and factually sufficient to support the trial court's judgment, and (3) whether Starflight waived its right to allocation because it did not timely submit rendition and allocation filings to HCAD. We conclude that sufficient evidence supports the trial court's findings that Starflight housed its property in Texas for more than a temporary period as of the rendition date, and that the ARB properly valued the property based on the evidence presented before it. We therefore affirm.

## Background

The taxable property in dispute is a 1988 Dassault–Breguet (Falcon 50), SN–51V jet airplane, which Starflight purchased on March 18, 2004. Before September 2005, Starflight housed its airplane in a hangar

at Lake Front Airport in New Orleans, Louisiana. On the eve of Hurricane Katrina, in late August 2005, Starflight flew the airplane to Houston, where its affiliated corporation had a business operation.

Hurricane Katrina destroyed the New Orleans hangar and Starflight's office. Thereafter, Starflight and its personnel, including the plane's pilot, relocated to the Houston area, and it transacted its business out of the Houston offices of its affiliated companies. Starflight used the airplane solely to serve its Houston-based affiliated companies. From September to December 2005, Starflight housed the plane at William P. Hobby Airport. At trial, Starflight maintained that, during this time and as of January 1, 2006 (the date of determination for the 2005 tax year), it intended to return the airplane to the Lake Front Airport in New Orleans.

In 2006, HCAD discovered the airplane and placed it on the tax appraisal roll for Harris County. Philip Rundle, Starflight's manager and the only trial witness, testified that he was responsible for tax-related issues for Starflight and the airplane. He testified that he and his partners were unaware of Harris County's rendition requirements, and thus they did not render the airplane before the April 15, 2006 rendition deadline.[1]

On August 11, 2006, HCAD wrote Starflight that the airplane was subject to ad valorem taxes and asked Starflight to provide information relevant to determining the taxable situs for the airplane for the 2005 tax year. Starflight responded with a letter dated August 22, 2006, contesting HCAD's appraised value of the airplane, $9,791,000.00.

On September 27, 2006, HCAD rejected Starflight's valuation and notified Starflight of the airplane's final appraised value. Starflight filed a notice of protest of taxes in Harris County on October 3, 2006, contending that the airplane should not be taxed in Harris County or in Texas. A hearing followed, attended by Mr. Rundle, wherein the ARB heard issues pertaining to the airplane's taxable situs. Mr. Rundle also testified that discussion took place before the ARB regarding rendition issues. On November 27, 2006, the ARB denied Starflight's protest. Starflight appealed the ARB order to the trial court, which rejected it.

## Discussion

### I. Jurisdiction

■ At the outset, HCAD contends that Starflight failed to exhaust its administrative remedies with respect to its complaints of valuation, rendition and allocation because Starflight did not contest these issues on its protest form and did not raise them before the ARB.[2] Thus, as a threshold matter, we determine whether we have jurisdiction over the appeal. *Kilroy v. Kilroy*, 137 S.W.3d 780, 783 (Tex. App.-Houston [1st Dist.] 2004, no pet.).

#### A. Standard of Review

■ District courts in Texas have general jurisdiction to hear and decide suits, absent statutory exception. *See* TEX. CONST. art. V., § 8; *Appraisal Rev. Bd. of Harris County Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 416 (Tex.

---

1. TEX. TAX CODE ANN §§ 22.01 (rendition), 22.23 (filing date) (Vernon 2008).

2. HCAD raised this objection during trial, but the trial court never ruled on it. *Sparks v. Booth*, 232 S.W.3d 853, 862–63 (Tex.App.-

Dallas 2007, no pet.); TEX.R.APP. P. 33.1(a). Nevertheless, we may not ignore a lack of jurisdiction issue. *Kilroy v. Kilroy*, 137 S.W.3d 780, 783 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

App.-Houston [14th Dist.] 2008, no pet.) (citing *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 220 (Tex.2002)). An administrative agency, however, has exclusive jurisdiction to decide matters within its purview if a pervasive regulatory scheme indicates that the Legislature intends for the regulatory process to be the exclusive forum to settle disputes. *Id.* (citing *Subaru,* 84 S.W.3d at 221). If an agency has exclusive jurisdiction, a party must typically exhaust any administrative remedy before seeking judicial review of the agency's action. *Id.* The Tax Code is a pervasive regulatory scheme, vesting the ARB with exclusive original jurisdiction over property tax appraisals. *O'Connor & Assocs.,* 267 S.W.3d at 416–17. In the Property Tax Code, the exhaustion of remedies provisions, found in section 42.09, are mandatory and jurisdictional. *Koll Bren Fund VI, LP v. Harris County Appraisal Dist.,* No. 01–07–00321–CV, 2008 WL 525799, at *4 (Tex.App.Houston [1st Dist.] Feb. 28, 2008, pet. denied) (mem.op.); *see* TEX. TAX CODE ANN. 42.09 (Vernon 2008). A trial court thus lacks subject matter jurisdiction, and must dismiss the claims within the agency's exclusive jurisdiction, until the party seeking relief exhausts all of its administrative remedies. *O'Connor & Assocs.,* 267 S.W.3d at 416. Accordingly, before seeking relief in district court, Starflight must have exhausted its administrative remedies. *Id.*

*B. Matters raised before the ARB*

■ Starflight protested that Harris County was not the taxable situs for its airplane, sent HCAD a letter dated August 22, 2006, disputing HCAD's appraised value of the airplane, attended the ARB, and received an order from the ARB denying its protest. *See* TEX. TAX CODE ANN. §§ 41.41(A) (Vernon 1999), 41.43 (Vernon 2007), 42.01(1)(A) (Vernon 1998); *O'Con-*

*nor & Assocs.,* 267 S.W.3d at 416. We have no record of the protest proceeding, but note that HCAD's counsel admitted to the trial court that as a practical matter the ARB panel would have considered issues of valuation and timely rendition of allocation information during Starflight's proceeding.

Because Starflight filed its protest in accordance with the Tax Code and because the ARB considered the substantive matters ultimately appealed to the district court, we hold that Starflight exhausted its remedies as to these matters, obtained an order denying them, and thus could seek judicial review of the ARB order. *Zapata County Appraisal Dist. v. Coastal Oil & Gas Corp.,* 90 S.W.3d 847, 851 (Tex.App.-San Antonio, 2002 pet. denied); *O'Connor & Assocs.,* 267 S.W.3d at 417 (citing *MAG–T, L.P. v. Travis Cent. Appraisal Dist.,* 161 S.W.3d 617, 624 (Tex.App.-Austin 2005, pet. denied)); *see* TEX. TAX CODE ANN. § 42.23(a) (Vernon 2005). The trial court therefore properly asserted subject matter jurisdiction over this suit. *O'Connor & Assocs.,* 267 S.W.3d at 417.

## II. Legal and Factual Sufficiency

First, Starflight complains that the trial court's finding of fact that it housed its airplane in Harris County, Texas, as of January 1, 2006, on more than a temporary basis, is against the overwhelming weight and evidence so as to be manifestly unjust.

*A. Standard of Review*

■ We review the trial court's findings for legal and factual sufficiency of the evidence using the same standards we apply in reviewing evidence supporting a jury's verdict. *Aguiar v. Segal,* 167 S.W.3d 443, 449 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); *see Davis v. City of Austin,* 632 S.W.2d 331, 333 (Tex.1982). A party

who attacks the legal sufficiency of an adverse finding on an issue on which that party has the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001).

In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could consider it, and disregard evidence contrary to the finding unless a reasonable fact finder could not disregard it. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). When a party attacks the factual sufficiency of an adverse finding on an issue on which that party had the burden of proof, that party must show on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242.

### B. Analysis

Texas Tax Code section 11.01(c) provides that the State of Texas has jurisdiction to tax tangible personal property located in this state for longer than a temporary period, unless exempt by law. The determination whether property is located within a taxing unit depends upon the facts of the case. *City of Dallas v. Overton*, 363 S.W.2d 821, 825 (Tex.Civ. App.-Waco 1963, writ ref'd n.r.e.) (holding that the question of whether or not the property in question is "more or less permanent" depends upon factual situation in each case); *see also Lawson v. City of Groves*, 487 S.W.2d 439, 441 (Tex.Civ. App.-Beaumont 1972, no writ) (holding that question of tax situs is factual and dependent on situation in each case). The determination of whether property is located within a taxing unit depends on the status of the property as of January 1 of the following year.

In reviewing the record for evidence as to whether the plane was more or less permanent, the following evidence supported the trial court's finding that Starflight's airplane was present in Harris County, Texas for more than a temporary period as of January 1, 2006:

● Starflight's August 22, 2006 letter to HCAD admitted that "the . . . aircraft was relocated from Louisiana to Texas after Hurricane Katrina. As of 01/01/06, this aircraft was located in Harris County, Texas[,]" and Starflight's trial witness testified to the same;

● Starflight housed its plane at Hobby Airport, in Harris County, Texas after Hurricane Katrina;

● After September 1, 2005, Starflight entered into a non-written agreement with Enterprise Aviation at Houston's Hobby Airport to house the plane;

● Starflight's plane served only the owners and partners of its Houston affiliates exclusively, and did not charter to any other parties;

● Starflight's owners and affiliate corporation have had a place of business in Houston since 2002;

● Hurricane Katrina destroyed Starflight's New Orleans hangar, the hangar was not rebuilt;

● Starflight's employees, including the plane's pilot, relocated to Houston after Hurricane Katrina;

● Starflight admitted "[t]he aircraft was being hangared at Hobby Airport . . . until adequate hangar space can be built in New Orleans";

● Starflight's flight log, though never submitted to the ARB, reflected that it was used regularly in Harris County where a majority percentage of the

plane's 2005 flights departed from Houston;

- Starflight offered no documentation at trial indicating its business transactions occurring at offices other than the Houston addresses of its affiliated companies or that it rendered the plane for tax purposes at any other locale;
- Starflight's New Orleans office maintained pilot log books, aircraft maintenance records and paperwork; and after Hurricane Katrina, such documents were maintained at the pilot's house in Texas;
- As of January 1, 2006, the airplane remained at Houston's Hobby Airport as part of a lease agreement Starflight had executed to store the plane; and
- Starflight is a corporation authorized to do business under the laws of the State of Texas.

We hold that this evidence is legally sufficient to support the trial court's finding that the airplane was not kept in Harris County, Texas purely on a temporary basis. *Overton,* 363 S.W.2d at 826 (holding that where planes received servicing and maintenance at Addison, remained available there for owner's business trips, and when such trips are completed, they are returned to Addison, planes are not "temporarily" kept at Addison).

Although relocation to Houston was unplanned, unintended, and unavoidable, the course of events following the storm overshadowed Starflight's intention, and the plane's removal to Houston was something more than temporary. The Texas Supreme Court has held that a party's intentions and preparatory acts are legally insufficient evidence to establish a plane's situs for tax purposes in the face of objective facts demonstrating it. *See Davis v. City of Austin,* 632 S.W.2d 331, 334 (Tex. 1982).

In a factual sufficiency review, we consider all of the evidence presented on tax situs, including Rundle's testimony that Starflight did not intend to house the plane in Harris County permanently. Aside from Rundle's testimony, however, nothing in the record shows the plane's return to Louisiana as of January 1, 2006. In light of the other evidence presented, we hold that factually sufficient evidence supports the trial court's finding.

## III. Rendition and Allocation

Second, Starflight complains that the district court erred in holding that Starflight failed to timely render the property and thus waived its right to an allocation and that it failed to adjudicate the issue of allocation. Starflight in particular appeals the trial court's conclusions of law pertaining to rendition and allocation, which state:

7. Rendition of the airplane, including allocation information, if any, was mandatory.

8. Under 34 Texas Administrative Code Ann., Section 9.4033 rendition requires that the owner provide enough information necessary to prove the entitlement to allocation and to permit the chief appraiser to apply an allocation formula appropriate to the airplane. For the year 2006 the rendition must have been provided by April 15, 2006.

9. The chief appraiser of HCAD has the nondiscretionary duty to include the airplane on the 2006 appraisal roll.

10. The airplane was not and has not been rendered by Starflight for the tax year 2006.

11. The plaintiff should recover nothing against the defendants in this case.

*A. Standard of Review*

We review *de novo* a trial court's conclusions of law, and we uphold the judgment if it can be sustained on any legal theory supported by the evidence. *Holloway–Houston, Inc. v. Gulf Coast Bank & Trust Co.*, 224 S.W.3d 353, 357 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *In re Moers*, 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.). An appellant may not challenge a trial court's conclusions of law for lack of factual sufficiency, but we review the legal conclusions drawn from the facts to determine their correctness. *Holloway–Houston*, 224 S.W.3d at 357 (citing *BMC Software*, 83 S.W.3d at 794).

### B. Analysis

Rendition "is the reporting of taxable property by the owner to the appraiser" and is thus procedural in nature. *Harris County Appraisal Dist. v. Texas Gas Transmission Corp.*, 105 S.W.3d 88, 94 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (en banc). Section 22.01(a) of the Tax Code requires that an owner of tangible personal property used to produce income shall render the property for taxation on January 1 of the tax year. *See* TEX. TAX CODE ANN. § 22.01(a) (Vernon 2008). The word "shall" in section 22.01(a) is mandatory, not discretionary. *Texas Gas Transmission Corp.*, 105 S.W.3d at 91 (citing *Robinson v. Budget Rent–A–Car Sys., Inc.*, 51 S.W.3d 425, 430–31 (Tex. App.-Houston [1st Dist.] 2001, pet. denied)).

A taxpayer must file its rendition form after January 1 and not later than April 15. *See* TEX. TAX CODE ANN. § 22.23(a). Upon written request by the property owner, the chief appraiser shall extend the deadline to May 15, and for good cause shown in writing may further extend the deadline an additional 15 days. *See id.* § 22.23(a) and (b). In an effort to encourage timely filings, in 2003 the Texas Legislature enacted section 22.28, which imposes a mandatory penalty of 10 percent of the property's final appraised value for late filing of a rendition statement.[3] *See id.* § 22.28(a).

Starflight first argues that its failure to render was the result of HCAD's failure to publicize Harris County's rendition requirements. Starflight offers no support from the record for its contention that HCAD failed to meet its notice requirements under section 22.21 of the Tax Code, and it did not offer any authority for its theory that such failure is a legal defense or condition precedent to Starflight's non-compliance with section 21.01(a). TEX. R.APP. P. 38.1(h); TEX. TAX CODE ANN. § 22.21(a); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689–90 (Tex.1989). We hold that Starflight waived this issue on appeal. TEX.R.APP. P. 38.1(h).

Starflight next argues that its August 22, 2006 letter constitutes a rendition statement. Both Starflight and HCAD agree that Starflight did not file a rendition statement by April 15, 2006 under section 22.23(a). Starflight never requested or received permission to late file a rendition statement under section 22.23(b). Starflight's only trial witness testified that "I don't think it's ever been rendered . . . ." The trial court concluded that Starflight filed no rendition statement for tax year 2006. We hold that legally sufficient evidence supports the trial court's conclusion

---

3. TEX. TAX CODE ANN. § 22.28(a) ("[T]he chief appraiser shall impose a penalty on a person who fails to timely file a rendition statement . . . as required by this chapter in an amount equal to . . . .").

of law that Starflight did not timely render the property for the 2006 tax year.

■ Starflight further contends that, as to its August 22, 2006 "late filed rendition" letter, the late filing does not bar it from seeking interstate allocation of the value of the plane for the time Starflight used it outside Texas. Even if we assume that Starflight's August 22 letter constituted a rendition filing, Starflight did not submit any allocation information with the letter and did not submit any allocation information until December 2006. Tex. Tax Code Ann. §§ 21.01(a) (Vernon 2006), 21.055 (Vernon 2008).

■ "Allocating" is determining the ratio of usage of personal property within each taxable situs when the property has more than one taxable situs. *Texas Gas Transmission Corp.*, 105 S.W.3d at 91 n. 3. The owner of an airplane used for business purposes may seek a reduction in the amount of total taxes owed upon the airplane by showing that another state or jurisdiction has acquired the right to tax the same airplane. Tex. Tax Code Ann. §§ 21.03, 21.055 (Vernon 2008); *Appraisal Rev. Bd. of Galveston County v. Tex–Air Helicopters, Inc.*, 970 S.W.2d 530, 534 (Tex.1998). The actual taxes owed in Texas on a business airplane thus will be reduced proportionately to reflect the amount of use in Texas, and the appraisal office shall allocate to this state the portion of the total market value of the property to fairly reflect its use in this state. *See* Tex. Tax Code Ann. §§ 21.03(a), (b)(1), (b)(2); *Texas Gas Transmission Corp.*, 105 S.W.3d at 91 n. 3.

■ In *Texas Gas* we held that a taxpayer who seeks allocation under the Tax Code must provide information showing entitlement to allocation **at the time of rendition.** *Texas Gas Transmission Corp.*, 105 S.W.3d at 94 ("[A] taxpayer

claiming entitlement to allocation must provide supporting information when he submits his rendition form."); *SLW Aviation, Inc. v. Harris County Appraisal Dist.*, 105 S.W.3d 99, 102 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Starflight argues that allocation is a constitutional entitlement; nevertheless, even a constitutional entitlement to allocation can be waived when a party fails to follow the implementing legislation. *Aramco Assoc'd Co. v. Harris County Appraisal Dist.*, 33 S.W.3d 361, 364 (Tex.App.-Texarkana 2000, pet. denied).

■ Under *Aramco* and *Texas Gas*, it is not Starflight's failure to render which waived any interstate allocation. Instead, it was Starflight's failure to file any allocation information contemporaneously with a rendition statement which precluded its argument for allocation in the trial court. *Texas Gas Transmission Corp.*, 105 S.W.3d at 94. Starflight's failure to submit allocation information until December 2006 did not meet its burdens under *Texas Gas, Aramco* or statutory law to establish an entitlement to allocation. Tex. Tax Code Ann. §§ 21.055, 22.01(a); Tex. Admin. Code § 9.4033(e); *Texas Gas Transmission Corp.*, 105 S.W.3d at 93.

Having failed to meet its burden, the district court properly found in its conclusions of law that Starflight did not provide information from which HCAD could have determined entitlement to allocation and thus failed to prove its entitlement to allocation. *Aramco*, 33 S.W.3d at 364; *Texas Gas Transmission Corp.*, 105 S.W.3d at 93–94.

Starflight argues that it submitted allocation information to HCAD when it filed its appeal of the ARB order in the trial court and that because the trial court's

review is de novo[4] the trial court erred in not adjudicating the issue of allocation. Starflight contends that "[a]ll parties agree HCAD received sufficient information to enable it to allocate the Airplane's use in late December 2006, when Starflight filed suit in district court." But, as the trial court found and as we have discussed, such submission was not filed with rendition and came too late. *See* TEX. TAX CODE ANN. §§ 22.01(a), 21.055; TEX. ADMIN. CODE § 9.4033(e); *Texas Gas Transmission Corp.*, 105 S.W.3d at 93. Thus, we hold Starflight waived its right to allocation. *See Texas Gas Transmission*, 105 S.W.3d at 93–94; *Aramco*, 33 S.W.3d at 364.

## Conclusion

Having considered Starflight's issues on appeal, we affirm judgment of the trial court.

Justice JENNINGS, dissenting.

## DISSENTING OPINION

TERRY JENNINGS, Justice.

The majority errs in holding that the evidence is legally sufficient to support the trial court's finding that, as of January 1, 2006, appellant, Starflight 50, L.L.C. ("Starflight"), had located its 1988 Desault–Breguet Falcon 50 aircraft in Harris County, Texas for "more than a temporary period." The majority further errs in affirming the trial court's judgment in favor of appellees, Harris County Appraisal District ("HCAD") and Harris County Appraisal Review Board ("HCARB") that the aircraft was subject to property taxation in Harris County for the 2006 tax year. Accordingly, I respectfully dissent.

## Standard of Review

We must sustain a legal sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). In conducting a legal sufficiency review, "a court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it." *Id.* at 822. If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). " '[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.' " *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the fact finder must be allowed to do so. *Keller*, 168 S.W.3d at 822; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). A reviewing court cannot substitute its judgment for that of the fact finder, so long as the evidence falls within this zone of reasonable disagreement. *Keller*, 168 S.W.3d at 822.

## Temporary Period

In Texas, generally, "tangible personal property is taxable by a taxing unit if . . .

---

4. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 877 (Tex.1990).

it is located in the unit on January 1 for more than a temporary period." Tex. Tax Code Ann. § 21.02(a)(1) (Vernon 2008). January 1 is "the only day of the year which the Legislature has set for fixing the questions of tax liability and situs." *City of Austin v. Davis*, 615 S.W.2d 316, 319 (Tex.Civ.App.-Austin 1981), *aff'd, Davis v. City of Austin*, 632 S.W.2d 331 (Tex.1982). Thus, the issue presented to this Court is whether, in the words of HCAD and HCARB, "the aircraft was located in Harris County on January 1[, 2006] for longer than a temporary period...." HCAD and HCARB assert that the evidence shows that the aircraft's "presence" in Harris County as of January 1, 2006 "was not transitory or limited," and the majority agrees.

In support of its conclusion that "Starflight's airplane was present in Harris County, Texas for more than a temporary period as of January 1, 2006," the majority emphasizes that Starflight, in August 2006, admitted that the aircraft was located in Harris County on January 1, 2006; had a "non-written agreement" to house, and did house, the aircraft at Hobby Airport after Hurricane Katrina; used the plane to serve only the owners and partners of its two clients, Versabuild and Versabar, which has had a "sales operation" in Harris County since 2002; has not rebuilt the aircraft's hanger in New Orleans; and has admitted that "[t]he aircraft was being hangared at Hobby Airport ... until adequate hangar space can be built in New Orleans." The majority also notes that "a majority percentage of the plane's 2005 flights departed from Houston" and Starflight employees, including the plane's pilot, who keeps aircraft documents at his Houston home, have been relocated to Houston after Hurricane Katrina. Moreover, the majority notes that Starflight, which is authorized to do business under the laws of the State of Texas, "offered no docu-mentation at trial indicating its business transactions occurring at offices other than the Houston addresses of its affiliated companies or that it rendered the plane for tax purposes at any other locale."

Much of this evidence concerns matters that occurred after January 1, 2006 and none of it supports a logical inference that Starflight had located its aircraft in Harris County on "more than a temporary" basis as of January 1, 2006. Although some of the evidence does serve to prove that the aircraft's location for the 2007 tax year was in Harris County, Starflight does not contest this fact.

However, focusing on the 2006 tax year and the critical day of January 1, 2006, it matters not that Starflight had yet to re-build its hanger in New Orleans, that several employees and the aircraft's pilot had evacuated here, or that the pilot currently keeps the aircraft's documents in a house in Pearland. Nor does it matter that Starflight is authorized to do business in Texas or that it uses the aircraft to serve Versabar and Versabuild. Moreover, although 105 out of the aircraft's 305 departures in 2005 were out of Texas, the Texas departures are completely understandable given the chaos following Hurricane Katrina. As explained at trial by Phillip Rundle, one of Starflight's member managers, from the time after Hurricane Katrina until January 1, 2006,

> The aircraft was flying employees of Versabar and Versabuild, family members, dogs and cats, all over the country to try to keep everybody's family together. Flying back and forth to New Orleans. I flew back there. It was pretty unbelievable. FEMA had come in and taken our generators and our forklifts and diesel tanks. And FEMA grabbed them and took them and went off with them.

In fact, following Hurricane Katrina, the aircraft had also been in Champaign, Illinois on a "temporary basis." Because one of Rundle's partners had evacuated to a small town outside of Champaign, "the plane was up there a lot and sometimes it was hangared in Champaign."

The aircraft was certainly present in Harris County on January 1, 2006, and Starflight arranged to house the plane at Hobby Airport. However, the undisputed fact remains that the only reason that Starflight flew its aircraft to Harris County at the very end of August 2005 was to avoid Hurricane Katrina, one of the worst natural disasters suffered in American history, and its aftermath. At trial, Rundle testified that in the four months following Hurricane Katrina and up through January 1, 2006, Starflight fully intended to return the aircraft to the Lake Front Airport in New Orleans, Louisiana, where it had been housed prior to September 2005. In fact, Starflight, Versabar, and Versabuild had made attempts to repair and rebuild their offices in New Orleans and had even rented space at Louis Armstrong Airport in New Orleans. Unfortunately, however, the chaos following Hurricane Katrina and the lack of hangar space at Louis Armstrong Airport made it impossible to permanently move the aircraft back to New Orleans as of December 5, 2007, when Rundle testified at trial. In sum, Rundle testified:

> And there's absolutely, in my opinion, a hundred percent certainty that prior to Hurricane Katrina we were in New Orleans on a permanent basis. After Hurricane Katrina, I still say a hundred percent[,] we were on a temporary basis from September 1, [2005] to [December 31, 2005]. We were located here, but it was on a temporary basis.
>
> . . . .

> I mean, how much more temporary can you get under the circumstances of a hurricane. I mean, it's like, if that ain't temporary, I don't know what is.

The trial court, as fact finder, was not free to disregard Starflight's evidence of the circumstances surrounding the evacuation of its aircraft to Harris County and Rundle's undisputed testimony that the aircraft, as of January 1, 2006, was not located in Harris County for more than a temporary period. *See City of Keller,* 168 S.W.3d at 816–17. Moreover, an appellate court, conducting a legal sufficiency review, "cannot disregard undisputed evidence that allows of only one logical inference." *Id.* at 814. Here, there is no evidence to support the trial court's finding contrary to Starflight's contextual evidence and Rundle's uncontradicted testimony. Accordingly, I would hold that the evidence is legally insufficient to support the trial court's finding that Starflight's "aircraft was located in Harris County, Texas, on January 1,2006 for more than a temporary period."

In support of its holding to the contrary, the majority relies upon *City of Dallas v. Overton,* 363 S.W.2d 821 (Tex.Civ.App.-Dallas 1962, writ ref'd n.r.e.) and *Davis v. City of Austin,* 632 S.W.2d 331 (Tex.1982). In *Overton,* the City of Dallas sued Overton, a Dallas resident, contending that Overton's airplanes, housed at the Addison Airport in Addison, Texas, were subject to ad valorem taxes under "the common law 'maxim mobilia sequuntur personam' (moveables follow the person), meaning that all movable property was considered to have its tax situs at the domicile of its owner." 363 S.W.2d at 823. The court rejected this contention and held that "tangible personal property acquires a tax situs in a jurisdiction apart from its owner if it is kept there with sufficient permanency that it may fairly be regarded as being

a part of the general mass of property within the jurisdiction." *Id.* at 825. Noting that the airplanes were "not transitory nor temporarily kept at Addison," the court held that Overton's airplanes had acquired a permanent status in Addison, Texas, rather than Dallas, Texas, and the City of Dallas lost the case. *Id.* at 826–827. *Overton* is simply not applicable to the instant case.

*Davis*, likewise, is wholly inapplicable. Davis, who owned an airplane and hangared it at the Austin Municipal Airport, planned to move the airplane to Tim's Airpark outside Austin's city limits for the upcoming 1975 tax year. *Davis*, 632 S.W.2d at 332. On December 30, 1974, the airplane was flown to Addison Airpark near Dallas, and, on January 9, 1975, it arrived at Tim's Airpark. *Id.* at 332–33. Because Davis failed to prove that the airplane had acquired an actual situs at Tim's Airpark on January 1, 1975, the court held that the airplane had its tax situs in the City of Austin. *Id.* at 335. It noted that the actual situs exception to the mobilia rule requires a showing that the property in question was located within the situs jurisdiction on or before tax day and that the property was "permanently" located there. *Id.* at 334–35. Had Davis shown that the airplane actually had been at Tim's Airpark on or before January 1, 1975 and had acquired situs there, his intent and preparatory acts would have been "important considerations in determining whether" the airplane had been " 'permanently' situated" there. *Id.* at 335. The court's discussion of actual situs in regard to the mobilia rule has absolutely nothing to do with the issue presented to this Court.

### Conclusion

Again, I would hold that the evidence is legally insufficient to support the trial court's finding that Starflight's "aircraft was located in Harris County, Texas, on January 1, 2006 for more than a temporary period." Accordingly, I would reverse the trial court's judgment and render judgment in favor of Starflight.