**BRIGGS EQUIPMENT
TRUST, Appellant,**

v.

**HARRIS COUNTY APPRAISAL
DISTRICT, Appellee.**

No. 01–08–00190–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 4, 2009.

Rehearing Overruled Sept. 17, 2009.

Ronald D. Gray, Geary, Porter & Donovan, P.C., Addison, TX, for Appellant.

Mario L. Dell' Osso, Olson & Olson, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION

SHERRY RADACK, Chief Justice.

This is an appeal from a take-nothing judgment against Briggs Equipment Trust ("Briggs") in an ad valorem tax valuation case. In several related issues on appeal, Briggs contends the trial court erred by improperly applying section 23.1241(a)(8) of the Tax Code in determining the taxable value of Briggs's heavy equipment inventory.

## BACKGROUND

*The Relevant Statutes*

Briggs sells heavy equipment in Harris County, and, as such, is required to file a declaration each year with Harris County Appraisal District ("HCAD") regarding the value of its heavy equipment inventory. *See* TEX. TAX CODE ANN. § 23.1241(f) (Vernon 2008). The Tax Code defines heavy equipment inventory as follows:

"Dealer's heavy equipment inventory" means all items of heavy equipment that a dealer holds for sale at retail. The term includes items of heavy equipment that are leased or rented but subject to a purchase option by the lessee or renter.

TEX. TAX CODE ANN. § 23.1241(a)(3) (Vernon 2008).

The Tax Code provides for the computation of tax on a heavy equipment inventory as follows:

[T]he market value of a dealer's heavy equipment inventory on January 1 is the total annual sales, less sales to dealers, fleet transactions, and subsequent sales, for the 12–month period corresponding to the preceding tax year, divided by 12; and

a sale is considered to occur when possession of an item of heavy equipment is transferred from the dealer to the purchaser.

TEX. TAX CODE ANN. § 23.1241(b)(1);(2) (Vernon 2008).

The Tax Code defines "total annual sales" as "the total of the sales price for each sale from a dealer's heavy equipment inventory in a 12–month period". TEX. TAX CODE ANN. § 23.1241(a)(9) (Vernon 2008). "Sales price" means (1) "the total amount of money paid or to be paid to a dealer for the purchase of an item of heavy equipment," or (2) "for a lease or rental with an option to purchase, the total amount of the lease or rental payments plus any final consideration, excluding interest." TEX. TAX CODE ANN. § 23.1241(a)(7) (Vernon 2008). Finally, the Tax Code defines a "subsequent sale" as follows:

"Subsequent sale" means a dealer-financed sale of an item of heavy equipment that, at the time of the sale, has been the subject of a dealer-financed sale from the same dealer's heavy equipment inventory in the same calendar year.

TEX. TAX CODE ANN. § 23.1241(a)(8) (Vernon 2008).

*Briggs's Calculation Pursuant to the Statutes*

Using these definitions, for 2006, Briggs reported "total annual sales" of $98,309,462 (4,363 transactions). From this amount, it subtracted $62,338,113 in "subsequent sales" (3,104 transactions), $779,029 in dealer sales (34 transactions), and 17,010,-423 in fleet sales (649 transactions), to reach its reported heavy equipment inventory of $18,181,897 (576 transactions), which, when divided by 12, leaves a market value of $1,515,158. The "subsequent sales" reported by Briggs were 3,104 lease transactions in which the lease contained a purchase option that was never exercised.

Briggs's comptroller explained that all of their equipment qualified as heavy equipment inventory because all of their leases contained purchase options. Therefore, the first time a piece of equipment was leased, Briggs would include the lease price in its market-value calculation, plus the remaining consideration that it would receive if the lessee chose to exercise the purchase option. However, if the first lessee did not exercise the purchase option, the next time Briggs leased the equipment, it would exclude the transaction, i.e., the lease payments and the remaining price, even if the purchase option was never ex-

ercised and the remaining price never paid. Briggs classified these subsequent and repeat leases as "subsequent sales" and excluded them from the market value calculation of its heavy equipment inventory.

*HCAD's Calculation Pursuant to the Statutes*

HCAD disagreed with Briggs's calculation. HCAD began its calculation by accepting Briggs's total annual sales amount of $98,309,462 (4,363 transactions), from which it accepted and excluded $779,929 in dealer sales (34 transactions) and $17,010,423 in fleet sales (649 transactions). However, HCAD did not agree that the $62,338,113 (3,104 transactions) qualified as subsequent sales, and therefore it refused to subtract that amount, leaving a heavy equipment inventory of $80,520,010 (3,680 transactions), which, when divided by 12, leaves a market value of $6,710,000.

## LAW AND ANALYSIS

*Standard of Review*

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). When challenged, a trial court's findings of fact are not conclusive if, as in the present case, there is a complete reporter's record. *In re K.R.P.*, 80 S.W.3d at 673; *Amador v. Berrospe*, 961 S.W.2d 205, 207 (Tex.App.-Houston [1st Dist.] 1996, writ denied).

Briggs had the burden to prove that the market value of its inventory was different than the value appraised by HCAD. *See Sears Roebuck & Co. v. Dallas Cent. Appr. Dist.*, 53 S.W.3d 382, 386 (Tex. App.-Dallas 2000, pet. denied). When, as here, a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it has the burden of proof, that party must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We review a trial court's conclusions of law de novo. *In re Moers*, 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.). We independently evaluate a trial court's conclusions to determine their correctness, and we will uphold conclusions on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

Statutory construction is a question of law that the appellate court reviews de novo. *In re Forlenza*, 140 S.W.3d 373, 376 (Tex.2004). "Th[e] enacted language [of a statute] is what constitutes the law, and when a statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006). The primary objective in construing any statute is to determine and give effect to the Legislature's intent. *Warner v. Glass*, 135 S.W.3d 681, 683 (Tex.2004). We begin with the plain and common meaning of the statute's words. *Id.*; TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). "If the meaning of the statutory language is unambiguous, we adopt ... the interpretation supported by the plain

meaning of the provision's words and terms." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999).

*Propriety of Take–Nothing Judgment*

■ In issue one, Briggs contends the trial court erred in rendering a take-nothing judgment rather than declaring the taxable value of Briggs's heavy equipment inventory. HCAD responds that Briggs waived this issue at trial. We agree.

After the close of evidence at trial, the following exchange took place between the attorneys for the parties and the trial court:

[Trial Court]: Okay. What am I supposed to do?

[HCAD's counsel]: We have represented to the Court that Briggs'[sic] interpretation—and would so represent in findings of facts and conclusions of law—interpretations of the statute would permit taxable property to, in the manner described, escape taxation or result in a partial total exemption of that property, which is not allowed.

It is a question of statutory interpretation and application. I've already informed the Court that we believe as a matter of law that there can be no award of attorney's fees in that circumstance irrespective of what the Court does, and if the Court finds that it should enter a final judgment, what the Harris County Appraisal District would request and submit—again in findings of fact and in the form of a judgment—would be a take-nothing judgment which simply leave the number that is on the appraisal roll, which the Court has before it in Defendant's Exhibit 5, as is. We believe Briggs' interpretation is incorrect.

Have I answered the Court's question?

[Trial Court]: Yes. So according to you—according to your belief, I do not find an appraisal value. I just find an interpretation of the statute.

[HCAD's counsel]: Correct. And the appraisal roll stands as is and we have informed the Court of what that number is. It's—versus the number in Plaintiff's Exhibit 1.

[Trial Court]: Okay. And the number is on your Exhibit 5?

[HCAD's counsel]: Right, and its not unlike the Seven Investments Supreme Court case, which I've just handed to the Court, which is Tab D.

[Trial Court]: Okay. **Well, does plaintiff disagree with how I get to a judgment?**

[Briggs' counsel]: Not necess—well, I get the feeling we're going to disagree with your judgment but—

[Trial Court]: Yeah, I dis—yes, I suspect you are.

[Brigg's counsel]: *But whether or not you put a specific value or put a take nothing—I mean, the—if you're putting their value or you put a take nothing, the effect is the same.*

[Trial court]: Okay. Because I—I agree that what I'm really doing is interpreting the statute the way I think it means and I'm not accepting plaintiff's interpretation. I guess I haven't really heard what defendant's interpretation is but I suspect it's along the line of what I'm thinking.

Based on this exchange, it is clear that the parties and the trial judge discussed whether she would determine actual taxable value or whether she would merely determine whether Briggs's interpretation of the statute involved was correct. Both attorneys agreed that the issue in the case was one of statutory interpretation and, as stated by Briggs's attorney "if you're put-

ting [HCAD's value] or you put a take nothing, the effect is the same." In light of this statement by Briggs's counsel, Briggs cannot now complain that the trial court erred because it did not include an actual numerical taxable value in its judgment.

We overrule issue one.

*"Subsequent Sales"*

■ In issues two through five, Briggs contends the trial court erred in disallowing Briggs's exclusion of "subsequent sales" under section 23.1241(a)(8) of the Tax Code. Specifically, Briggs contends that, once it had included a piece of equipment with a lease-purchase option in its heavy equipment inventory, if the purchase option were not exercised, Briggs should be allowed to categorize each subsequent lease of the same equipment as a "subsequent sale" under section 23.1241(a)(8). HCAD responds that successive leases do not qualify as "subsequent sales" under section 23.1241(a)(8).

The "successive sales" exception to the heavy equipment inventory statute provides as follows:

"Subsequent sale" means a dealer-financed sale of an item of heavy equipment that, at the time of the sale, has been the subject of a dealer-financed sale from the same dealer's heavy equipment inventory in the same calendar year.

TEX. TAX CODE ANN. § 23.1241(a)(8).

*Plain Language of the Statute*

HCAD first argues that the successive leases cannot be subsequent sales because they are not "dealer-financed sales," as that term is defined by the Tax Code. We agree. The Tax Code defines a "dealer-financed sale" as "the sale at retail of an item of heavy equipment in which the dealer finances the purchase of the item, is the sole lender in the transaction, and retains exclusively the right to enforce the terms of the agreement that evidences the sale." TEX. TAX CODE ANN. § 23.1241(a)(3) (Vernon 2005).

Even if we were to assume that the term "sale" in the exclusion includes leases with purchase options that are never exercised, we cannot conclude that such transactions are "dealer—financed." The term "finance" means "to raise or provide funds." BLACK's LAW DICTIONARY 662 (8th ed. 2004). Briggs admittedly did not provide any funds to further the lease or purchase of any heavy equipment. However, Briggs argues that by providing "some terms for delay in payment with the possible imposition of interest,"[1] it has "financed" the purported "subsequent sales" transactions. But Briggs provides no authority for this assertion, and we fail to see how imposing a penalty for late payment equates to providing "financing," which is essentially the lending of funds. Based on the plain language of the statute, we conclude that Briggs's repeated leases with unexercised purchase options are not "subsequent sales" because they are not "dealer-financed."

*History of the "Subsequent Sales" Exclusion*

In 1993, the Texas Legislature enacted a special inventory-valuation law relating to the valuation of a dealer's motor-vehicle inventory. *See* TEX. TAX CODE ANN. § 23.121–22 (Vernon 2008). Similar special inventory valuation laws were passed for dealers in vessels and outboard motors,

---

1. Briggs's lease-option agreements provided that if the purchase option were exercised, payment would be due in 10 days, and that any payments not timely made "shall bear interest at the rate of one and one-half percent (1½%) per month or the highest legal rate, whichever is less."

manufactured housing, and heavy equipment. *See* TEX. TAX CODE ANN. § 23.124–25 (Vernon 2008) (regarding inventory valuation of vessels and outboard motors); TEX. TAX CODE ANN. § 23.127–28 (Vernon 2008) (regarding inventory valuation of manufactured housing.); TEX. TAX CODE ANN. § 23.1241–42 (Vernon 2008) (regarding inventory valuation of heavy equipment). These special inventory statutes are specifically excluded from the traditional January 1 inventory valuations. *See* TEX. TAX CODE ANN. § 23.12(a) (Vernon 2008).

In 1995, the motor vehicle inventory statute was amended to deal with a double taxation problem that had arisen. *See* Act of May 16, 2005, 74th Leg., R.S., ch. 945, § 2. For example, an auto dealer might sell a car on credit, and then, due to a repossession, sell the same vehicle again. To prevent double taxation, the legislature created an exception for "subsequent sales," which it defined as "a dealer-financed sale of a motor vehicle that, at the time of the sale, has been the subject of a dealer-financed sale from the same dealer's motor vehicle inventory in the same year." *Id.* (now codified at TEX. TAX CODE ANN. § 23.121(a)(12), (b) (Vernon 2008)).

As other special inventory laws were enacted, similar "subsequent sales" exceptions were included and the language of the exclusions was virtually identical. *See* TEX. TAX CODE ANN. § 23.124(a)(5), (12) (vessel and outboard motors); TEX. TAX CODE ANN. § 23.127(a)(11), (13) (manufactured housing); TEX. TAX CODE ANN. § 23.1241(a)(3), (8) (heavy equipment).

Briggs and HCAD agree that these exclusions were enacted to deal with the issue of the repossession of inventory after a dealer-financed sale, which is not the situation presented here. Even after the definition of "Dealer's heavy equipment inventory" was amended to include leases with purchase options,[2] the language of the "subsequent sale" exclusion remained unchanged. Therefore, the history of the "subsequent sale" exclusion shows that its limited purpose was to exclude the resale of dealer-financed, then repossessed equipment, from the dealer's inventory.

*Briggs's Alternative Theories of Recovery*

■ Briggs also argues that, if this Court disagrees with its interpretation of the "subsequent sales" exclusion, there are other methods for calculating its taxable inventory, which would also result in a lower taxable amount than that assessed by HCAD. Essentially, Briggs argues that its claimed "subsequent sales" could be reclassified as "fleet transactions,"[3] or that its "total annual sales" could be recalculated to include only actual sales plus rental revenues received.

---

**2.** The Legislature included leases with purchase options in the definition of "Dealer's heavy equipment inventory" to correct a different double taxation problem. Because of the nature of the heavy equipment business, items of heavy equipment were often leased before being sold. As a result, they were taxed on the January 1 valuation for leased equipment under § 23.12(a) of the Tax Code, and then, if the purchase option was exercised and the equipment sold, the transaction was included under the heavy equipment inventory statute found in § 23.1241(2). By including leases with purchase options under a dealer's heavy equipment inventory, they

were not included in the January 1 valuation. Such a double taxation problem is not present in this case because Briggs's leases with purchase options were not included in their January 1 inventory valuation.

**3.** Fleet transactions are "the sale of five or more items of heavy equipment from a dealer's heavy equipment inventory to the same person in one calendar year," and are also excluded from the market value of a dealer's heavy equipment inventory. *See* TEX. TAX CODE ANN. § 23.1241(a)(5), (b)(1).

■ However, the trial court's findings of fact and conclusions of law do not address either of these arguments. If a trial court's original findings do not address a ground of recovery or a defense, then the party relying on that ground or defense must request additional findings in proper form. *Limestone Group, Inc. v. Sai Thong, L.L.C.*, 107 S.W.3d 793, 799 (Tex. App.-Amarillo 2003, no pet.); *Levine v. Maverick Cty. Water Control*, 884 S.W.2d 790, 796 (Tex.App.-San Antonio 1994, writ denied); *Sears, Roebuck and Co. v. Nichols*, 819 S.W.2d 900, 907–08 (Tex.App.-Houston [14th Dist.] 1991, writ denied); *accord Smith v. Smith*, 22 S.W.3d 140, 150 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (noting that appellant had duty to request additional findings of fact and conclusions of law in connection with disproportionate division of community estate or in connection with trial court's calculation of community portion). By failing to request additional findings of fact and conclusions of law do so, one waives any complaint about the unmentioned ground or defense. *Smith*, 22 S.W.3d at 150; *Sears, Roebuck & Co.*, 819 S.W.2d at 907–08. Given this, Briggs has waived its contention that the trial court erred by not reducing its tax liability under either of the alternative theories of calculation.

Accordingly, we overrule issues two through five.

### Attorney's Fees

In issue six, Briggs contends the trial court erred in failing to award attorney's fees under section 42.29 of the Tax Code, which provides that a property owner who prevails in appeal to the trial court of an excessive or unequal appraisal may be awarded reasonable attorney's fees. *See* TEX. TAX CODE ANN. § 42.29 (Vernon 2008). However, Briggs did not prevail in its appeal; thus, the trial court did not err in refusing to award attorney's fees.

We overrule issue six.

### CONCLUSION

We affirm the judgment of the trial court.