**Opinion issued June 25, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00475-CV

————————————

### DOUGLAS H. WHEELOCK AND STARSCAPE HOLDINGS, LLC, Appellants

### V.

### TRIM ELECTRIC, INC, Appellee

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-39973**

---

### MEMORANDUM OPINION

In this appeal from a bench trial arising out of a construction dispute, Douglas H. Wheelock and Starscape Holdings, LLC challenge the legal and factual sufficiency of the evidence supporting the trial court's judgment against them and in favor of Trim Electric, Inc. We affirm.

## Background

David and Kim Swartz hired Trim to do electrical work for the opening of a wine bar and a cocktail bar in an area of downtown Houston known as "The Pavillions." Wheelock, who is Starscape's principal member, invested in the bars. The project fell apart when Swartz defaulted on the lease with The Pavillions. Because it had not been paid for $47,093.68 in electrical improvements at the time Swartz defaulted, Trim filed a lien on the property.

Wheelock wanted to complete the project through Starscape, but The Pavillions would not allow Starscape to assume the property leases until Trim released its lien. Wheelock reached an agreement with Trim's owner, Joe Palumbo. Palumbo agreed to release the lien if Starscape agreed to pay the amount owed to Trim and Wheelock personally guaranteed Starscape's obligations. Trim filed this lawsuit when Starscape stopped making the payments due under the parties' agreement, asserting claims for breach of contract, promissory estoppel, and attorney's fees. Wheelock and Starscape answered the lawsuit, and Starscape counterclaimed for unjust enrichment and attorney's fees on the ground that Trim had been paid more than it was owed for the work actually performed.

Only two witnesses testified at trial: Palumbo and Wheelock. Palumbo testified to the circumstances giving rise to Trim's contract claim. Palumbo stated that Wheelock delivered a written contract to Trim's office, which Wheelock

represented had been signed and notarized. A few days later, Palumbo noticed that Wheelock had signed the personal guaranty but had not signed the agreement for Starscape. Palumbo telephoned Wheelock, who was out of the country, and inquired how to proceed. According to Palumbo, Wheelock instructed him to take the agreement to Alan Michael, a man whom Wheelock had previously introduced to Palumbo as being in charge of the project, for his signature on Starscape's behalf. Palumbo did as instructed.

At the bench trial, Trim offered a written agreement signed by (1) Palumbo for Trim and (2) Michael for Starscape and (3) guaranteed by Wheelock in his individual capacity. The agreement set forth Starscape's obligation to pay Trim "the sum of $47,093.68 for the electrical work already performed by Trim at the property; $1128.00 for legal expenses and $6574.00 for work that will be completed[.]" The agreement structured the payments as follows:

- $13,000 within five days of Starscape signing a new lease with The Pavillions; and

- Twelve equal monthly installments of $3,482.97 due on the first day of the month until the entire contract amount was paid.

Palumbo testified that Starscape made an initial payment of $13,500 and three monthly payments. Starscape did not make any further payments under the agreement for the work already performed, though it did pay Trim for additional work performed pursuant to purchase orders signed by Michael.

3

During his testimony, Wheelock disputed that he told Palumbo to have Michael sign the agreement on Starscape's behalf. According to Wheelock, Michael was only a general contractor on the project and had no authority to bind Starscape. And, although Wheelock acknowledged his promise that Starscape would make Trim whole for the work performed for Swartz, he testified to different agreement terms. Wheelock stated that he agreed to pay Trim out of the tenant assessment money that would be released by The Pavillions upon completion of the work at the properties. Any payments Starscape made to Trim before the work was completed were made in good faith but were not contractually obligated. The wine bar failed almost immediately after its opening, the tenant assessment money was never released, and thus, according to Wheelock, Starscape was not obligated to pay Trim any amount outstanding for the work already performed. Starscape and Wheelock did not offer any alternative writing as evidence of the agreement alleged by Wheelock.

After considering the evidence presented at trial and the arguments of counsel, the trial court issued the following findings of fact and conclusions of law:

*Findings of Fact*

4.      [Wheelock and Starscape] desired to assume the leasehold free and clear of any liens, and entered into a valid contract with Trim. The terms of the contract are that Doug Wheelock would be held personally liable for the terms of the contract and that Starscape would pay Trim the following amounts:

4

    a.    $47,093.68 for electrical work already performed by Trim at the property;

    b.    $1,128.00 for legal expenses; and

    c.    $6,574.00 for additional work to be performed on the properties. This work was never performed.

5.    In consideration, Trim would release [its] lien on the properties upon receipt of an initial $13,000.00, as well as resume and complete the remaining electrical work.

. . . .

8.    [Wheelock and Starscape] made payments under the contract totaling $24,448.91.

. . . .

10.    [Trim] is due the remaining balance of $23,772.77 under the terms of the contract.

11.    [Trim] is not due any more money for work performed for [Wheelock and Starscape] outside of the contract.

12.    There is no evidence that [Starscape] or its principal officer [Wheelock] communicated to [Trim] that they did not authorize Alan Michael to sign the construction agreement with [Trim].

13.    . . . [Wheelock and Starscape], jointly and severally, held out to [Trim] that Alan Michael was an authorized agent to sign the construction agreement with [Trim] on [Starscape's] behalf.

14.    There is sufficient evidence of [Starscape's] and its principal officer's [Wheelock's] knowledge, approval, and, thus, ratification of Alan Michael's signature on behalf of [Starscape] to the construction contract with [Trim].

5

15. . . . Alan Michael possessed actual authority and, in the alternative, apparent authority to sign the parties' agreement on behalf of Douglas Wheelock and Starscape . . . .

16. . . . Wheelock signed a valid and enforceable unconditional guaranty to pay [Trim] for the work and materials provided on behalf of [Wheelock and Starscape] and is individually liable to [Trim] for the sums of $23,772.77 under the parties' contract and $0 for additional work performed pursuant to change orders requested by [Wheelock and Starscape] pursuant to the parties' contract.

*Conclusions of Law*

8. [Trim] has provided sufficient evidence of entitlement to recovery for claim for breach of contract.

. . . .

18. The greater weight of the credible evidence establishes that [Trim] and [Starscape] agreed that Trim would perform work and valuable materials on behalf of Starscape in exchange for, and that [Wheelock], individually provided an unconditional guaranty for the payment of the sum of

    a. $47,093.68 for electrical work already performed by Trim at the properties;

    b. $1,128.00 for legal expenses; and

    c. $6,574.00 for additional work to be performed on the properties.

These are the "essential terms" of the parties' contract and such contract does not fail for indefiniteness.

The trial court's final judgment awards Trim $23,772.77 in damages, plus attorney's fees and costs, against Wheelock and Starscape, jointly and severally.

## Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence supporting the findings by applying the same standards we use to review a jury's findings. *Briggs Equip. Trust v. Harris Cnty. Appraisal Dist.*, 294 S.W.3d 667, 670 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Findings of fact are not conclusive if, as here, there is a complete reporter's record. *Id.*

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id.* at 822. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.*

In our factual-sufficiency review, we consider all the evidence supporting and contradicting the challenged findings. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989); *Quality Infusion Care, Inc. v. Health Care Serv.*

*Corp.*, 224 S.W.3d 369, 378 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We will set aside the verdict only if the findings are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses and the weight given their testimony. *See City of Keller*, 168 S.W.3d at 819; *Sw. Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

We review de novo a trial court's conclusions of law, and uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002); *In re Moers,* 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). An appellant may not challenge a trial court's conclusions of law for lack of factual sufficiency, but we review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belg.,* 83 S.W.3d at 794.

## Findings and Conclusions

### A. Trim's breach of contract claim

#### 1. Factually sufficient evidence supports the trial court's findings on the terms of the parties' agreement

This is not a case in which one party asserts that an agreement fails for indefiniteness; Starscape does not dispute the existence of an enforceable agreement to pay Trim. Rather, in its first issue, Starscape asserts a number of

reasons why the evidence is not factually sufficient to support the agreement terms found by the trial court. Specifically, Starscape argues that the trial court could not reasonably conclude that Starscape was obligated to pay Trim the amounts stated in the written agreement—$47,093.68 for work already performed, $6574 for work to be performed, and $1128 for the legal fees—because Wheelock did not sign the agreement on behalf of Starscape, the agreement was not properly notarized, and the payments actually made by Starscape did not match the payments stated in the agreement. According to Starscape, the conflicting evidence regarding the terms of the agreement could lead the trial court to only one conclusion: the agreement entered by the parties was not the agreement alleged by Trim.

At trial, Trim offered a written agreement signed by Wheelock in his individual capacity and by Michael on behalf of Starscape as evidence of Starscape's obligation to pay the amounts found by the trial court. Palumbo testified that the written agreement admitted at trial was the same agreement Wheelock delivered to Trim's office, and that it was not until a couple days after Wheelock delivered the contract that Palumbo realized the line designated for Starscape's signature was blank. Once he realized that Wheelock had not signed on Starscape's behalf, Palumbo telephoned Wheelock and then obtained Michael's signature for Starscape as instructed by Wheelock over the telephone.

9

Wheelock's testimony at trial conflicted with Palumbo's testimony in part. Although Wheelock agreed that he delivered a written agreement to Palumbo, he disagreed that the agreement admitted into evidence at trial was the agreement he delivered. The only page of the agreement that Wheelock recognized was the page containing his signature under the personal guaranty, and that page does not set forth Starscape's payment obligations. Wheelock testified that another contract existed wherein the parties agreed that Trim would be paid out of the tenant assessment money released by the property owner upon completion of the work. No writing memorializing the agreement alleged by Wheelock was offered at trial.

The resolution of Palumbo's and Wheelock's conflicting testimony regarding the terms of the agreement was a matter for the trial court. *See Sw. Bell Media,* 825 S.W.2d at 493. The trial court was free to believe all, some, or none of Palumbo's and Wheelock's testimony. *See id.* From Palumbo's testimony alone, the trial court could reasonably conclude that the parties entered into the written agreement offered by Trim, under which Trim would release its lien and recommence work on the property in exchange for an initial lump sum and subsequent monthly payments by Starscape as stated in the written agreement admitted at trial. While Wheelock's testimony is some evidence of a different agreement weighing in Starscape's favor, it does not render the trial court's findings clearly wrong or unjust. We therefore conclude that evidence of an

10

agreement to pay Trim the amounts stated in the written agreement is factually sufficient. Because there is no dispute that Wheelock did not sign that agreement on behalf of Starscape, however, we turn to the issue of whether Michael had authority to sign the agreement for Starscape.

### 2. Factually sufficient evidence supports the trial court's finding that Michael had apparent authority to bind Starscape

The trial court found that Michael possessed actual or apparent authority to bind Starscape to the agreement with Trim. Wheelock challenges the factual sufficiency of the evidence for both findings. Because we conclude that the finding on Michael's apparent authority is supported by the evidence, it is unnecessary for us to review his actual authority. *See BMC Software Belg.*, 83 S.W.3d at 794 (instructing that appellate court should sustain trial court's judgment on any legal theory supported by evidence).

"An agent acting within the scope of his apparent authority binds the principal as if the principal itself had taken the action." *Expro Americas, LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 924 (Tex. App.—Houston [14th Dist.] 2011, pet. filed). A third party's "good faith" belief that one person is the agent of another is not sufficient to demonstrate the person's authority to bind the principal. *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Instead, the principal must communicate to the third party or take some action indicating that

11

the person is authorized to act as an agent. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). The principal's "acts" include participation, knowledge, or acquiescence. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998). A party seeking to recover under an apparent-authority theory must show (1) the principal had full knowledge of all material facts at the time of the conduct alleged to be the basis for the agent's apparent authority and (2) harm resulting from justifiable reliance on the principal's words or conduct. *Reliant Energy Servs.*, 336 S.W.3d at 784. Accordingly, to determine Michael's apparent authority to bind Starscape, we examine Wheelock's conduct and the reasonableness of Trim's assumptions regarding Michael's authority.

The trial court could conclude from the evidence that Wheelock's actions resulted in Palumbo's reasonable belief that Michael had authority to bind Starscape. Palumbo testified that Wheelock introduced Michael as the man "heading up" the project at a meeting in Palumbo's office before the agreement was signed. Wheelock could not recall whether he made clear to Palumbo during their initial introduction or at any other time that Michael was only a general contractor and not Starscape's agent. When Palumbo noticed the agreement Wheelock later delivered did not include a signature on behalf of Starscape, Palumbo telephoned Wheelock. Wheelock, who was out of the country, told Palumbo that Michael should sign the agreement for Starscape. In accordance with

that instruction from Wheelock, Palumbo took the agreement to Michael and witnessed his signature. The written agreement contains Michael's signature with the handwritten notation "for Doug Wheelock" on the blank designated for Starscape. Although Michael's signature on the written agreement is different than his signature on the purchase orders, Palumbo testified that Michael signed the agreement using his full name and signed the purchase order using his initials only. Neither party called Michael as a witness at trial. Starscape made the initial payment provided for in the agreement and three monthly installments thereafter; in exchange, Trim released its lien on the bar properties.

Although Wheelock's testimony that Michael did not have authority to bind Starscape is some evidence weighing in Starscape's favor, that testimony does not render the trial court's finding that Michael had apparent authority to sign agreement with Trim on Starscape's behalf so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. We conclude that the evidence is factually sufficient to support the trial court's agency finding.

We overrule the first issue.[1]

---

[1] Because we hold that Michael had apparent authority to bind Starscape to the agreement with Trim, we do not reach Starscape's second issue challenging the trial court's finding that Starscape ratified the agreement. *See Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (noting that apparent authority and ratification are alternative theories under which principal may be liable for agent's acts).

### 3.     The damages award must be sustained

In the fourth issue, Starscape argues that the trial court erred in finding that Trim was due $23,772.77 under the parties' agreement because the evidence established that "a majority of the alleged damages . . . existed prior to Starscape's involvement" and the value of the work Trim performed at Starscape's request was only $5916. Starscape accurately states the evidence, but that evidence does not render the trial court's finding that Trim was owed $23,772.77 erroneous. We have already sustained the trial court's findings regarding the terms of the parties' agreement, and Starscape does not contend on appeal that the Trim is not entitled to $23,772.77 under the agreement found by the trial court.

We overrule the fourth issue.[2]

## B.     Wheelock's guaranty

In the third issue, Wheelock argues that the trial court erred in concluding that he was individually liable for the $23,772.77 owed to Trim under the parties' agreement because he signed a "valid and enforceable" guaranty. "[A] promise by one person to answer for the debt, default, or miscarriage of another" must be in writing. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b) (West 2012). The writing

---

[2]     Starscape's fourth issue includes an alternative argument that Trim's promissory estoppel claim cannot support the damages awarded by the trial court. The trial court, however, did not make any findings or conclusions on Trim's promissory estoppel claim; the basis for the trial court's judgment was Trim's contract claim. Accordingly, we do not consider Starscape's alternative argument.

must be complete within itself in every material detail, and must contain all of the essential elements of the agreement. *See Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). "The essential terms of a guaranty agreement are (1) the parties involved, (2) a manifestation of intent to guaranty the obligation, and (3) a description of the obligation being guaranteed." *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also Park Creek Assocs., Ltd. v. Walker*, 754 S.W.2d 426, 429 (Tex. App.—Dallas 1988, writ denied); *Garza v. Evans*, No. 01-11-00666-CV, 2012 WL 1893731, at *5 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op.).

In this case, Trim's and Starscape's payment and performance obligations and Wheelock's guaranty are stated in the same three-page document. Immediately after Trim's and Starscape's signatures on the agreement is a section entitled "Personal Guaranty." That section provides:

> Guarantor, Doug Wheelock, individually hereby agrees to absolutely and unconditionally guarantee the payment obligations of Starscape, LLC under the foregoing Agreement. . . . In the event of a default by Starscape under the foregoing Agreement, Guarantor waives any right to require Trim (a) proceed against Starscape or pursue any rights or remedies against Starscape with respect to the above Agreement, or (b) pursue any other remedy whatsoever in [ ] Trim's power.

Wheelock signed the guaranty in his individual capacity, indicating his intent to guaranty Starscape's obligations under the agreement with Trim. Although the guaranty does not specifically name Trim as the creditor or set forth the obligation

guaranteed, it repeatedly references the "foregoing Agreement" between Trim and Starscape. The agreement states the amount Starscape owes and when it is owed. Construed as a whole, the document demonstrates the essential terms of a guaranty agreement. *See Material P'ships*, 102 S.W.3d at 261. We therefore hold that the trial court did not err in concluding that the guaranty was enforceable and that Wheelock was individually liable for Starscape's payment obligations.

We overrule the third issue.

## C.    Starscape's claims for unjust enrichment and attorney's fees

In the fifth and sixth issues, Starscape contends the trial court erred by refusing to find that Trim was unjustly enriched and to award Starscape damages and attorney's fees. The trial court's findings of fact and conclusions of law, however, do not address Starscape's unjust enrichment claim or its request for attorney's fees. When a trial court's findings do not address a ground of recovery, the party relying on that ground must request additional findings in proper form or else any complaint about the unmentioned ground is waived. *See* TEX. R. CIV. P. 298; *Briggs Equip. Trust*, 294 S.W.3d at 674 (holding that plaintiff waived claim for tax liability reduction under alternative method of calculation by failing to request additional findings and conclusions). The record does not indicate that Starscape requested additional findings of fact or conclusions of law on its claims for unjust enrichment and attorney's fees. Consequently, Starscape has waived its

16

contention that the trial court erred by failing to award damages and attorney's fees on the unjust enrichment claim.

We overrule the fifth and sixth issues.

## Conclusion

Having concluded that the evidence is sufficient to support each of the challenged fact findings and that the trial court did not err in concluding that Wheelock personally guaranteed Starscape's payment obligations, we affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Justices Jennings, Brown, and Huddle.