**Opinion issued December 8, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00003-CV

————————————

**CYPRESS CREEK FAYRIDGE, L.P., Appellant**

**V.**

**HARRIS COUNTY APPRAISAL DISTRICT, Appellee**

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2013-71573

## MEMORANDUM OPINION

Cypress Creek Fayridge, L.P. sued the Harris County Appraisal District, contending that the District appraised its property at an excessive market value. After a bench trial, the trial court found that the property's value was $5,080,589, consistent with the District's appraisal, and entered judgment for the District. On

appeal, Cypress Creek contends that (1) the trial court erred by improperly placing the burden of proof on Cypress Creek to show that the appraisal was excessive; and (2) the evidence is legally and factually insufficient to support the trial court's judgment.

We affirm.

## BACKGROUND

Cypress Creek disagreed with the District's determinations regarding the market value of its low-income apartment complex for the 2013 fiscal year. *See* TEX. TAX CODE ANN. §§ 42.01, 42.21 & 42.23 (West 2015). At trial, the parties disputed both the market value of the complex and the proper method for calculating that value. Cypress Creek advocated that its complex had a market value of $2,210,882, while the District contended that its value was $5,080,600. Each side relied on an expert to support its position. Both Cypress Creek and the District moved to exclude the testimony of the other's expert before trial. The trial court carried those motions with the case, and neither party secured a ruling on their respective motions.

Brian Cogburn testified for Cypress Creek. He was a licensed real estate broker and had been for more than 30 years. Half of his experience involved low-income housing. He prepared a broker's price opinion with respect to Cypress Creek's low-income apartment complex. In Cogburn's opinion, the market value of

the apartment complex for the fiscal year of 2013 was the same as its value for the 2012 fiscal year—$2,210,882.

Because Cypress Creek's complex was under construction in 2011, no units were available for lease, and the complex was not generating income, as of January 1, 2012. Some units became available for lease later in 2012. As of January 1, 2013, the complex's construction was complete, 64.5 percent of the complex's units were occupied by tenants, and the complex was generating income. Cogburn did not know the occupancy rate at trial, but the property's developer subsequently testified that the complex was "functionally fully leased." Almost the entire complex was devoted to low-income housing; 148 of its 152 units are rent restricted.

In calculating the complex's value, Cogburn relied on its audited financial statements for the period dating from January 5, 2010 through December 31, 2012. These statements presented a negative net operating income for the complex. Under the income method of calculating market value, this negative net income could reflect a market value of zero or a negative value, notwithstanding the completion of the complex's construction. Relying on the negative net income, Cogburn concluded that the complex's market value as of January 1, 2013 was no different than in the preceding year. He opined that the difference between his valuation of the complex and the District's appraisal was that the District appeared "to have projections as if the property had reached a stabilized occupancy."

3

Cogburn conceded that he was not a licensed real estate appraiser and that his broker's license does not permit him to do appraisal work for pay. He agreed that he is not an expert in appraisals and characterized his opinion of the apartment complex's market value as a valuation rather than an appraisal. He acknowledged that his analysis did not comply with the Uniform Standards of Professional Appraisal Practice.

For the District, David Brantley testified. He had worked for the District for about seven and a half years and is a registered professional appraiser. He testified that he used the income method of calculating the apartment complex's market value and his analysis complied with the Uniform Standards of Professional Appraisal Practice. Brantley concluded that the complex's market value for the fiscal year of 2013 was $5,080,589, which he rounded to $5,080,600.

Brantley analyzed market data and listings, sales, and rental data from in and around the complex's market area, including comparable low-income properties. Brantley estimated the complex's operating expenses by using data compiled by the Texas Department of Housing and Community Affairs. He testified that this data reflected the expenses typical of low-income housing of a similar size in the same region as the complex under consideration. He did not rely on the expenses reported in the complex's audited financial statements for the previous year due to the newness of the apartment complex.

Brantley was cross-examined about his decision to rely on typical expense data rather than the complex's audited financial statements, which Brantley could not remember having reviewed. The financial statements were included in his report, however, and he testified that, if they were included in his report, he would have "looked at them at some point." He agreed that he "did not rely on them necessarily" in reaching his conclusion about the complex's market value. Brantley disagreed with the assertion that he simply had disregarded the audited financial statements as being irrelevant. He testified that he "would have considered them." Nonetheless, he conceded that he could not say how the complex's actual expenses—as reflected in the audited financial statements—compared to the TDHCA data.

The trial court made findings of fact and conclusions of law at Cypress Creek's request. In relevant part, the trial court found and concluded that:

Findings of Fact

* * *

8. Plaintiff offered a broker's valuation, not an appraisal. Plaintiff's expert recommended that the property's 2013 assessed value be the same as its 2012 assessed value. The Court finds that Plaintiff's evidence was not persuasive or credible.

9. HCAD's expert used the income method of appraisal to determine the value of the property at issue. According to HCAD's expert, after adjustments, the value of the property as of January 1, 2013, for ad valorem tax purposes, is $5,080,589.

5

10. The value of the subject property identified under Account No. 133-047-001-0001 as of January 1, 2013, for ad valorem tax purposes, is $5,080,589.

\* \* \*

Conclusions of Law

\* \* \*

8. Plaintiff did not meet its burden of proof establishing a value different from that determined in the administrative process pursuant to Texas Tax Code § 42.23.

9. Plaintiff did not meet its burden to provide sufficient information to justify a reduction to the appraised value of the subject property, for the tax year in issue, pursuant to Texas Tax Code § 42.25.

10. Based on the credible evidence, the appraised value for the property for ad valorem tax purposes for the tax year 2013 should be $5,080,589.

Cypress Creek moved for a new trial, which the trial court denied.

## DISCUSSION

Cypress Creek raises two issues on appeal. First, it contends that the District carries the burden of proof for a market valuation of the complex. Unless the District proves that its appraisal is correct, Cypress Creek argues, the trial court must render judgment in favor of the taxpayer's position on the property's market value. Second, it contends that the proof is legally and factually insufficient to support the trial court's finding that the market value of the apartment complex was $5,080,589 because the District's expert assumed that the complex's operating expenses were

6

comparable to those of other low-income apartment complexes in the same region, rather than taking into account the complex's actual expenses for the previous year, which indicated a negative net income.

## I. Burden of Proof and Standard of Review

The assignment of the burden of proof affects the standard of review for legal sufficiency. A party who challenges the legal sufficiency of a finding on which it did not bear the burden of proof must show that no evidence supports the finding. *Republic Petrol. v. Dynamic Offshore Res.*, 474 S.W.3d 424, 433 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Thus, we must reject the challenge unless:

(1) there is a total absence of proof of a vital fact;

(2) the court is barred by rules of law or evidence from crediting the only proof of a vital fact;

(3) the proof of a vital fact is no more than a scintilla of evidence; or

(4) the proof conclusively disproves a vital fact.

*Id.* In contrast, a party who challenges the legal sufficiency of a finding on which it bore the burden of proof must show not only that no evidence supports the trial court's finding, but also that the evidence conclusively proves the contrary. *Jones v. Pesak Bros. Constr.*, 416 S.W.3d 618, 624 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Under this standard, we must reject the challenge unless the evidence proves all vital facts in support of the challenger's position as a matter of law. *Id.*

Regardless of who had the burden of proof, we consider the entire record in the light most favorable to the trial court's findings, crediting favorable proof and disregarding contrary proof so long as a reasonable factfinder could do so. *Republic Petrol.*, 474 S.W.3d at 433; *N.Y. Party Shuttle v. Bilello*, 414 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The factfinder is the lone judge of the witnesses' credibility and the relative weight of their testimony. *Republic Petrol.*, 474 S.W.3d at 433. The factfinder may believe one witness instead of another, accept or reject any given witness's testimony in whole or part, and resolve conflicts in the proof. *James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce*, 403 S.W.3d 360, 367 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict and are subject to review for sufficiency of the evidence under the same standards that are applied when reviewing a jury's findings. *Briggs Equip. Tr. v. Harris Cty. Appraisal Dist.*, 294 S.W.3d 667, 670 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Cypress Creek contends that the assignment of the burden of proof in tax appraisal suits is unsettled; it notes that this issue was recently before the Supreme Court of Texas, which requested merits briefing but ultimately denied a petition for review in a case in which the parties disputed the burden of proof. *See Estate of*

8

*Smith v. Ector Cty. Appraisal Dist.*, No. 15-0995 (Tex. Sept. 2, 2016) (denying review). Cypress Creek maintains the burden belongs to the Appraisal District.

Our court has assigned the burden of proof to the taxpayer in tax appraisal suits. *See Briggs Equip.*, 294 S.W.3d at 670 (taxpayer had burden to prove market value of its inventory differed from district's appraisal); *Starflight 50, L.L.C. v. Harris Cty. Appraisal Dist.*, 287 S.W.3d 741, 745–46 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (reciting test applicable when party with burden of proof challenges legal sufficiency in suit in which taxpayer appealed from trial court's adverse finding); *Pizzitola v. Galveston Cty. Cent. Appraisal Dist.*, 808 S.W.2d 244, 246 (Tex. App.—Houston [1st Dist.] 1991, no writ) (same); *see also (Corp. Park W.) Hartman Reit Operating P'ship., II v. Waller Cty. Appraisal Dist.*, No. 01-05-00913-CV, 2006 WL 1766790, at *1 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.) (mem. op.) (reciting test applicable when party with burden of proof

challenges legal sufficiency in suit in which taxpayer appealed from jury's finding regarding equal and uniform value of real property).[1]

---

[1]     Many decisions rendered by other courts of appeal have, like this court's decisions, assigned the burden of proof to the taxpayer in tax appraisal suits. *See Estate of Smith v. Ector Cty. Appraisal Dist.*, 480 S.W.3d 796, 800–01 (Tex. App.—Eastland 2015, pet. denied) (taxpayer bears burden of proof); *Galveston Cent. Appraisal Dist. v. Valero Ref.-Tex. L.P.*, 463 S.W.3d 177, 188 (Tex. App.—Houston [14th Dist.] 2015, pet. granted) (reciting test applicable when party without burden of proof challenges legal sufficiency in suit in which appraisal district appealed from trial court's finding); *Key Energy Servs., LLC v. Shelby Cty. Appraisal Dist.*, 428 S.W.3d 133, 146–47 (Tex. App.—Tyler 2014, pet. denied) (reciting test applicable when party with burden of proof challenges legal sufficiency in suit in which taxpayer appealed from trial court's finding); *Stacy Family Enters. Inc. v. Tarrant Appraisal Dist.*, No. 02-13-00170-CV, 2013 WL 6564299, at *2 (Tex. App.—Fort Worth Dec. 12, 2013, no pet.) (mem. op.) (taxpayer had burden in suit to correct tax rolls); *Harvest Life Found. v. Harris Cty. Appraisal Dist.*, No. 14-11-01038-CV, 2013 WL 2456867, at *5 (Tex. App.—Houston [14th Dist.] June 6, 2013, no pet.) (mem. op.) (reciting test applicable when party with burden of proof challenges legal sufficiency in suit in which taxpayer appealed from trial court's finding); *Lack's Stores, Inc. v. Gregg Cty. Appraisal Dist.*, No. 06-10-00125-CV, 2011 WL 3963013, at *4 (Tex. App.—Texarkana Sept. 9, 2011, no pet.) (mem. op.) (taxpayer has burden to show excessive valuation); *Cenveo Corp. v. Dallas Cent. Appraisal Dist.*, 260 S.W.3d 713, 715 (Tex. App.—Dallas 2008, no pet.) (reciting test applicable when party with burden of proof challenges legal sufficiency in suit in which taxpayer appealed from trial court's finding); *Daily v. Bowie Cty. Appraisal Dist.*, No. 06-07-00055-CV, 2007 WL 4178880, at *2 (Tex. App.—Texarkana Nov. 28, 2007, pet. denied) (mem. op.) (same); *Hodge v. Dallas Cent. Appraisal Dist.*, No. 05-06-01418-CV, 2007 WL 4098907, at *3 (Tex. App.—Dallas Nov. 19, 2007, pet. denied) (mem. op.) (same); *Sears Roebuck & Co. v. Dallas Cent. Appraisal Dist.*, 53 S.W.3d 382, 386 (Tex. App.—Dallas 2000, pet. denied) (taxpayer had burden to prove different market value than the value appraised by district); *Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.*, 981 S.W.2d 483, 485 (Tex. App.—Austin 1998, no pet.) (reciting test applicable when party with burden of proof challenges factual sufficiency in suit in which taxpayer appealed from trial court's finding); *Walker v. Appraisal Review Bd. for Guadalupe Cty. Appraisal Dist.*, 846 S.W.2d 14, 17 (Tex. App.—San Antonio 1992, writ denied) (taxpayer had burden of proof).

In this case, however, the burden of proof is not outcome determinative. Even if we assigned the burden to the District, Cypress Creek has not demonstrated that no evidence supports the trial court's market-value finding. Rather, the District adduced competent evidence that is legally and factually sufficient to support the trial court's findings.

## II. Sufficiency of the Evidence

### A.    Applicable Law

Real property in Texas is subject to taxation on an annual basis. *See* TEX. TAX CODE ANN. §§ 11.01(a)–(b), 21.01. Absent other statutory provision, all taxable property is taxed based on "its market value as of January 1." *Id.* § 23.01(a).

An appraisal district's determinations of the market value of property must be made "by the application of generally accepted appraisal methods and techniques." TEX. TAX CODE ANN. § 23.01(b). If it uses mass appraisal standards, the district's appraisal standards must comply with the Uniform Standards of Professional Appraisal Practice. *Id.* In addition, the same or similar methods of appraisal must be applied to the same or similar kinds of property, but "each property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value." *Id.*

11

In determining market value, an appraisal district must "consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method." TEX. TAX CODE ANN. § 23.0101. When, as here, the income method of appraisal is used, the appraisal district must:

(1) analyze comparable rental data available to the chief appraiser or the potential earnings capacity of the property, or both, to estimate the gross income potential of the property;

(2) analyze comparable operating expense data available to the chief appraiser to estimate the operating expenses of the property;

(3) analyze comparable data available to the chief appraiser to estimate rates of capitalization or rates of discount; and

(4) base projections of future rent or income potential and expenses on reasonably clear and appropriate evidence.

*Id.* § 23.012(a). With respect to income and expense statements and cash-flow projections, the district must consider "historical information and trends," "current supply and demand factors affecting those trends," and "anticipated events such as competition from other similar properties under construction." *Id.* § 23.012(b). With regulated low-income housing, the district also must "take into account the extent to which that use and limitation reduce the market value." *Id.* § 23.21(b).

**B.     Analysis**

Cypress Creek contends that the District's appraisal is not supported by legally sufficient proof because its expert did not rely on the apartment complex's actual expenses in his calculation of market value. It relies on the Property Tax

Code's requirement that a district base its appraisal on "the individual characteristics" affecting the property and the "available evidence that is specific" to its value. TEX. TAX CODE ANN. § 23.01(b). Cypress Creek additionally contends that the District's expert's calculation of market value is speculative because he assumed that the complex's expenses were similar to those of other low-income apartment complexes in the same region.

The Property Tax Code requires appraisal districts to appraise property "based upon the individual characteristics that affect the property's market value." TEX. TAX CODE ANN. § 23.01(b). This requirement, however, does not mandate reliance upon a specific type of data over any other type. *See, e.g.*, *W. AH 406 Ltd. v. Cent. Appraisal Dist. of Taylor Cty.*, 213 S.W.3d 544, 546–47 (Tex. App.—Eastland 2007, pet. denied) (requiring rent and occupancy restrictions to be taken into account); *Haney v. Cooke Cty. Tax Appraisal Dist.*, 782 S.W.2d 349, 351–52 (Tex. App.—Fort Worth 1989, no writ) (requiring structural damage to be taken into account). While actual prior rental expenses are evidence of a property's individual characteristics, a fact finder reasonably conclude that they are not outcome determinative when the property's characteristics have significantly changed; i.e., as in this case, where construction was completed on the date of the appraisal but had not been completed throughout the year proceeding the appraisal date.

The Property Tax Code requires that "all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value." TEX. TAX CODE ANN. § 23.01(b). Absent a contrary statutory directive, a requirement that all evidence specific to a property be "taken into account" is not a requirement that any piece of evidence ultimately is determinative or must be relied upon by an appraisal district. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 266 (11th ed. 2003) (defining "consider" in part as "to take into account"); *see also* TEX. GOV'T CODE ANN. §§ 311.011, 312.002 (West 2013) (words and phrases to be construed according to common usage absent technical or particular meaning; words in civil statutes to be given "ordinary meaning" unless they are terms of art).

The statute requires that an appraisal district consider all evidence; the record contains proof that the District's expert did so. Brantley testified that he did not remember whether he had reviewed the complex's audited financial statements, but he testified that he would have reviewed those statements if they were included with his report. The following colloquy between Brantley and Cypress Creek's counsel summarizes the evidence about the degree to which the appraisal took into account actual expenses:

Q. I've made mention to the audited financial statements for this particular subject property.

A. Yes, ma'am.

14

Q. And you indicated that they weren't relevant to your analysis.

A. I never said they weren't relevant, I just said that I didn't necessarily rely on them completely.

Q. Okay. So let me ask: Would they have been relevant to your analysis?

A. I would have considered them.

Thus, the record contains legally sufficient evidence that Brantley took into account the complex's actual expenses to the extent required by the Property Tax Code. The inconsistencies in Brantley's testimony on this subject were the trial court's to resolve in its capacity as factfinder. *James J. Flanagan*, 403 S.W.3d at 367.

Nor was Brantley's testimony impermissibly speculative in relying on the TDHCA market data regarding similar complexes in the area. Under the Property Tax Code, Brantley was required to "analyze comparable operating expense data available" in order "to estimate the operating expenses of the property." TEX. TAX CODE ANN. § 23.012(a)(2). Testimony is speculative "if it is based on guesswork or conjecture." *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012). Testimony is speculative when it lacks "any evidentiary foundation." *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 650 (Tex. 1994) (per curiam); *see also Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex. 2010) (per curiam) (expert's testimony was speculative because it lacked "objective, evidence-based support for its conclusions"). Brantley, however, relied on data compiled by the

15

TDHCA concerning expenses incurred by other low-income housing of similar size in the same area in appraising market value. Brantley testified that the data he used reflected typical expenses for this region. This constitutes legally sufficient evidence of comparability for purposes of Section 23.012(a)(2). *Cf. Harris Cty. Appraisal Dist. v. Houston Laureate Assocs.*, 329 S.W.3d 52, 57–58 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (affirming trial court's decision that expert's testimony of comparability based on data obtained from appraisal district's records on property classifications was reliable). Brantley's reliance on the TDHCA data therefore was not foundationless guesswork or conjecture.

The trial court's market-value finding is factually insufficient only if the supporting proof is so weak that the finding is clearly wrong or manifestly unjust. *Dupree v. Boniuk Interests, Ltd.*, 472 S.W.3d 355, 363–64 (Tex. App.—Houston [1st Dist.] 2015, no pet.). In a bench trial, the trial court judges the witnesses' credibility. *Id.* at 364. We may not substitute our judgment for that of the trial court if the proof at trial permits reasonable disagreement. *Id.*

We have rejected the complaints that Brantley's use of the TDHCA data concerning average operating expenses for low-income housing of similar size in the same region is speculative or amounts to no evidence. Cypress Creek also notes that Brantley could not identify all of the counties other than Harris County that comprise the comparative region. The degree to which lapses in memory or gaps in

16

knowledge undermine a witness's persuasiveness, however, is left to the factfinder to decide. *See Hailey v. Hailey*, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (in bench trial, "trial court may consider all the facts and circumstances in connection with the testimony of each witness and accept or reject all or part of that testimony").

The trial court found that the expert testimony that Cypress Creek proffered was not credible. The Property Tax Code requires determinations of the market value to be made "by the application of generally accepted appraisal methods and techniques." TEX. TAX CODE ANN. § 23.01(b). Cypress Creek's expert is not a licensed appraiser, and he offered a valuation opinion that he expressly characterized as something other than an appraisal. Cogburn maintained that Cypress Creek's apartment complex did not increase in market value between January 1, 2012 and January 1, 2013, notwithstanding his acknowledgement that not a single unit was ready to lease on the former date but that all units were lease-ready and 64.5 percent of the units were leased on the latter date. A reasonable factfinder could find this testimony unpersuasive.

Given the totality of the evidence and the deference due to the trial court's assessment of the witnesses' credibility, the proof is not so weak as to render the trial court's market-value finding clearly wrong or manifestly unjust. Thus, the

17

proof is factually sufficient to support the trial court's finding and judgment. *See Dupree*, 472 S.W.3d at 363–64.

## CONCLUSION

We hold that legally and factually sufficient evidence supports the trial court's findings. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland